UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA

    - against -

CHRISTOPHER FINAZZO and
DOUGLAS DEY,

              Defendants.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**
10-CR-457 (RRM)

**ROSLYNN R. MAUSKOPF, United States District Judge:**

      Christopher Finazzo and Douglas Dey ("Defendants") are charged by superseding indictment with twenty-eight counts, including: (i) conspiracy to commit mail fraud and wire fraud and conspiracy to violate the Travel Act (Count One); (ii) mail fraud (Counts Two through Fifteen); (iii) wire fraud (Counts Sixteen through Twenty-Six); (iv) money laundering conspiracy (Count Twenty-Seven); and (v) false statement in report required to be filed with the United States Securities and Exchange Commission (Count Twenty-Eight). (Doc. No. 44.) Defendants move to dismiss portions of Count One and the entirety of Counts Two through Twenty-Seven of the superseding indictment. (Doc. No. 49.) For the reasons set forth below, Defendants' motion is DENIED.

## BACKGROUND

      The original indictment, filed on June 8, 2010, charged Defendants with twenty-eight counts, including: (i) conspiracy to commit mail fraud and wire fraud and conspiracy to violate the Travel Act (Count One); (ii) mail fraud (Counts Two through Fifteen); (iii) wire fraud (Counts Sixteen through Twenty-Six); (iv) money laundering conspiracy (Count Twenty-Seven); and (v) false statement in report required to be filed with the United States Securities and Exchange Commission (Count Twenty-Eight). (Original Indictment (Doc. No. 1).) The original

indictment described a "fraudulent scheme" in which Finazzo, an executive at the clothing retailer Aéropostale, secretly received approximately fifty percent of the profits from certain transactions between Aéropostale and South Bay, a clothing vendor controlled by Dey, in exchange for "caus[ing] Aéropostale to use South Bay as a vendor to purchase merchandise at rates that were less favorable to Aéropostale than the prevailing market rate." (Original Indictment at ¶ 7.) On October 19, 2010, Defendants moved for a bill of particulars that would require, *inter alia*, the Government to specify the transactions in which Aéropostale purchased merchandise from South Bay at "rates that were less favorable to Aéropostale than the prevailing market rate." (Doc. No. 37.) On December 8, 2010, this Court granted Defendants' motion.

On December 14, 2010, the Government filed a superseding indictment that alleges the fraudulent scheme in different terms, causing Defendants to "no longer require a bill of particulars." (Letter of Dec. 16, 2010 from Gov't to Defs. (Doc No. 45).) Specifically, the superseding indictment does not include an allegation that Aéropostale purchased merchandise from South Bay at rates that were "less favorable to Aéropostale than the prevailing market rate." (Original Indictment at ¶ 7.) Rather, the superseding indictment alleges that Defendants "deprived Aéropostale both of the opportunity to seek lower prices for merchandise it purchased from South Bay and the opportunity to purchase that merchandise from other vendors." (Superseding Indictment at ¶ 7.)

## **DISCUSSION**

1. <u>Sufficiency of the Superseding Indictment</u>

Defendants argue that the superseding indictment must be dismissed because it "does not allege that Aéropostale was harmed through the deprivation of money or property or that either defendant made any misrepresentations relating to the value of the merchandise and services that

South Bay sold to Aéropostale." (Defs.' Mem. in Supp. (Doc. No. 49-2) at 5.) As discussed below, these arguments are meritless. Defendants' motion misconstrues the fraudulent scheme alleged in the superseding indictment, and is based on the erroneous and baseless assumption that the Government has admitted to the existence of certain facts by filing a superseding indictment.

Under Federal Rule of Criminal Procedure 7(c)(1), an indictment need only track the language of the statute charged and state the time and place of the alleged crime. *United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002) (citation omitted). "'[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). To be sufficient, "'an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *Id.* at 776 (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992)).

Under Federal Rules of Criminal Procedure 12(b), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). "The general issue in a criminal trial is, of course, whether the defendant is guilty of the offense charged." *United States v. Doe*, 63 F.3d 121, 125 (2d Cir. 1995) (citations omitted). Motions to dismiss indictments are disfavored. *See, e.g.*, *United States v. Bustos de la Pava*, 268 F.3d 157, 165 (2d Cir. 2001) ("dismissal of an indictment is an extraordinary remedy reserved for extremely limited circumstances implicating fundamental rights" (citation and internal quotation marks omitted)).

Federal criminal procedure does not provide for pretrial determination of the sufficiency of the evidence: "[t]here is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context." *See, e.g.*, *United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005). Rule 12 was not intended to permit motions requiring consideration of facts outside the pleadings because, if that were allowed, the "pretrial motion could be turned into a trial of the general issue." 1A Charles Alan Wright & Andrew D. Leipold, Federal Practice and Procedure Criminal § 194 (4th ed. 2008). Thus, in the absence of a full proffer of the government's evidence, "the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *Alfonso*, 143 F.3d at 776–77 (reversing dismissal of indictment where district court "looked beyond the face of the indictment and drew inferences as to the proof that would be introduced by the government at trial" to satisfy an element of the charge). When there has been no such proffer, in deciding a motion to dismiss, the Court must consider only whether the allegations of the indictment, taken as true, are sufficient to establish a violation of the charged offense. *United States v. Sampson*, 371 U.S. 75, 78–79 (1962).

The Government must satisfy three elements to secure a conviction for mail fraud or wire fraud: (1) a scheme to defraud victims of (2) money or property, through the (3) use of the mails.[1] *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004); *United States v. Walker*, 191 F.3d 326, 334 (2d Cir. 1999). The superseding indictment here is sufficient on its face. It sets forth a detailed description and the approximate time of Defendants' alleged wrongful acts; the fraudulent scheme allegedly took place between August 1996 and May 2010. (Superseding Indictment ¶ 7–10.) Tracking the language of 18 U.S.C. §§ 1341 and 1343, respectively, the superseding indictment states that Defendants' acts and mental states met the elements of the

---

[1] The mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, "use the same relevant language, [and] are analyzed in the same way." *United States v. Slevin*, 106 F.3d 1086, 1088 (2d Cir. 1996) (citations omitted).

offenses set out. Defendants are sufficiently informed of the charges against them, and have adequate information to plead double jeopardy as a defense under the Fifth Amendment. Therefore, the superseding indictment is facially valid. *See Alfonso*, 143 F.3d at 776.

Defendants nevertheless argue that the superseding indictment should be dismissed because "no offense is stated" in the indictment, which, they claim, "does not allege that Aéropostale was harmed through the deprivation of money or property or that either defendant made any misrepresentations relating to the value of the goods and services that South Bay sold to Aéropostale." (Defs.' Mem. in Supp. at 5 (citing *United States v. Aleynikov*, 737 F. Supp. 2d 173, 176 (S.D.N.Y. 2010) ("Dismissal is required where the conduct alleged in the indictment as a factual basis for the offense is not actually prohibited by the language of the statute."))).

### a. *Actual or Contemplated Harm*

As noted above, the three elements of mail fraud or wire fraud are (1) a scheme to defraud victims of (2) money or property, through the (3) use of the mails. *Fountain*, 357 F.3d at 255. "The first element focuses on the intent to harm; the second element is concerned with the precise nature of that harm, and requires that the harm be concrete." *Walker*, 191 F.3d at 335. The Government need not show that the intended victim was actually defrauded, and may rely on proof that Defendants contemplated some actual harm or injury to their victims. *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987); *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1180 (2d Cir. 1970).

Defendants contend that the allegation in the superseding indictment that they deprived Aéropostale of the "*opportunity* to seek lower prices for merchandise it purchased from South Bay and the *opportunity* to purchase that merchandise from other vendors" does not constitute actual or contemplated harm resulting in the deprivation of money and property. (Defs.' Mem.

5

in Supp. at 6–7 (quoting Superseding Indictment ¶ 7) (emphasis in original).) Therefore, Defendants argue, the superseding indictment must be dismissed because it does not contain an allegation of actual or contemplated harm. (*Id.*) This argument is meritless.

In the Second Circuit, the "'right to control' how corporate assets were spent . . . has been recognized as a property interest that is protected by the mail fraud statute," and thus "the withholding or inaccurate reporting of information that could impact on economic decisions can provide the basis for a mail fraud prosecution." *United States v. Wallach*, 935 F.2d 445, 462–63 (2d Cir. 1991); *see also United States v. Rossomando*, 144 F.3d 197, 201 n.5 (2d Cir. 1998) ("the concrete harm contemplated by the defendant is to deny the victim the right to control its assets by depriving it of information necessary to make discretionary economic decisions"). Here, the superseding indictment alleges that Finazzo falsely denied and failed to disclose his agreement with Dey and his interest in South Bay, while he simultaneously exercised his authority to choose vendors and approve prices, causing Aéropostale to purchase South Bay merchandise in amounts and at prices sufficient to garner him kickbacks in excess of twenty million dollars. (Superseding Indictment at ¶¶ 3, 7–8.) The superseding indictment further alleges that, as a result of this secret agreement, Finazzo deprived Aéropostale of the opportunity to seek out lower-priced merchandise. (*Id.* at ¶ 7.) Thus, Finazzo obviously withheld information that would have had an "impact" on Aéropostale's "economic decisions," depriving the company of the "opportunity to make informed decisions." *Wallach*, 935 F.2d at 463–64.

Defendants argue, however, that *Wallach* has been limited by subsequent case law, relying principally on *United States v. Mittelstaedt*, 31 F.3d 1208 (2d Cir. 1994). (Defs.' Mem. in Supp. at 9.) In *Mittelstaedt*, the defendant concealed his ownership interest in property when he advised a town on a possible acquisition of that property, which, had the transaction been

6

consummated, might have earned him a profit. *Id.* at 1216. There, the Government argued that "it does not matter whether the towns would have suffered some economic loss if the scheme had been successful, because the loss of the 'right to control' the expenditure of public funds, through the loss of the ability to make a fully informed decision, is sufficient to constitute mail fraud under § 1341." *Id.* at 1217. The Second Circuit disagreed, and held that "lack of information that might have an impact on the decision regarding where government money is spent . . . is not a tangible harm and therefore does not constitute a deprivation of section 1341 'property' . . . [unless] the information withheld either [is] of some independent value or [] bear[s] on the ultimate value of the transaction." *Id.*[2] Thus, at trial, the Government "had to establish that the omission caused (or was intended to cause) actual harm to the village of a pecuniary nature *or* that the village could have negotiated a better deal for itself if it had not been deceived." *Mittelstaedt*, 31 F.3d at 1217 (emphasis in original).[3]

The superseding indictment fully complies with the holding in *Mittelstaedt* by alleging that Finazzo, who had the authority to select vendors and approve prices, deprived Aéropostale of the opportunity to seek lower prices from South Bay or other vendors. Several significant facts are "necessarily implied by the specific allegations" in the superseding indictment. *United*

---

[2] Defendants are correct that "Judge Learned Hand's statement in *United States v. Rowe*, 56 F.2d 747 (2d Cir. 1932) . . . that the mail fraud statute is designed to protect a defrauded party's right 'to bargain with the facts before him,' whether or not there is proof of damage or of an unequal bargain," was limited by *United States v. Regent Office Supply Co.*, 421 F.2d 1174 (2d Cir. 1970). *United States v. Dinome*, 86 F.3d 277, 284 (2d Cir. 1996) (quoting *Rowe*, 56 F.2d at 749). In *Regent Office Supply Co.*, the Second Circuit "specified that *Rowe* would not 'support the conclusion that no definable harm need be contemplated by the accused to find him guilty of mail fraud.'" *Dinome*, 86 F.3d at 284 (quoting *Regent Office Supply Co.*, 421 F.2d at 1181). As discussed above, however, the superseding indictment alleges actual or contemplated pecuniary harm to Aéropostale in that Finazzo allegedly concealed his interest in South Bay even as he caused Aéropostale to purchase goods from South Bay, thereby depriving Aéropostale of the opportunity to seek lower prices for merchandise from South Bay or other vendors.

[3] In *Mittelstaedt*, the Second Circuit ruled on the propriety of the district court's jury instructions; the case did not involve a motion to dismiss the indictment. The court held that the jury instructions were ambiguous because they "left open the possibility of a conviction premised solely upon the disinclination of the municipal authorities 'on general principles' to deal with an insider who had abused his fiduciary position." *United States v. Dinome*, 86 F.3d 277, 284 (2d Cir. 1996) (citing *Mittelstaedt*, 31 F.3d at 1218). By contrast, as discussed below, the superseding indictment contains allegations that Aéropostale was harmed because it "could have negotiated a better deal for itself if it had not been deceived." *Mittelstaedt*, 31 F.3d at 1217. Of course, should Defendants wish to request a limiting jury instruction consistent with *Mittelstaedt* at the proper time, they are free to do so.

*States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002) (citation omitted) ("an indictment must be read to include facts which are necessarily implied by the specific allegations made"). The superseding indictment specifically alleges that Dey covertly paid Finazzo approximately fifty percent of South Bay's profits. (Superseding Indictment at ¶ 7.) This allegation necessarily implies that Finazzo had the incentive to steer Aéropostale towards purchasing as much merchandise from South Bay as possible, and at the highest possible price, because the more South Bay profited, the more he received in kickbacks. Moreover, as an executive responsible for selecting vendors and approving prices, Finazzo had the power to cause Aéropostale to pay South Bay's prices, thereby depriving the company of the opportunity to seek lower prices. It follows that Finazzo did not seek lower prices from South Bay, which would have resulted in smaller kickbacks, or lower prices from other vendors, which would have resulted in no kickbacks at all. Although the superseding indictment alleges only that Aéropostale was deprived of the "opportunity" to "seek" lower prices, it is necessarily implied that lower prices existed and were available to Aéropostale.[4]

The indictment as a whole makes it clear that the information withheld from Aéropostale does not merely "have an impact on the decision regarding *where* . . . money is spent"; rather, it influenced *how much* money was spent. *Mittelstaedt*, 31 F.3d at 1217 (emphasis added) ("lack of information that might have an impact on the decision regarding where . . . money is spent, *without more*, is not a tangible harm" (emphasis added)). If Finazzo caused[5] Aéropostale to pass

---

[4] For example, it is clear that Aéropostale could have negotiated with South Bay to receive lower prices had Aéropostale learned that one of its executives was receiving substantial kickbacks on the profits of transactions between the two companies. It is difficult to imagine that South Bay would not have offered the merchandise at a price marked down at least by an amount equal to the amount of the kickback. *See, e.g.*, *United States v. Shyres*, 898 F.2d 647, 653 (8th Cir. 1990) (explaining in § 1341 mail fraud case based on "right to control" theory that "the jury could have found on the evidence that appellants deprived [the victim corporation] of the right to pay for services alone, not for services plus kickbacks").
[5] Of course, the Government need only show that Defendants contemplated actual harm. *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987).

8

up opportunities to pay lower prices so that he could continue secretly to pocket fifty percent of the profits on South Bay sales, the following "tangible harm" is apparent: Aéropostale's costs were inflated, its profits suffered, and its shareholders were economically harmed. Thus, the superseding indictment sufficiently alleges actual or intended pecuniary harm to Aéropostale because the company "could have negotiated a better deal for itself if it had not been deceived." *Mittelstaedt*, 31 F.3d at 1217; *see also United States v. Ashman*, 979 F.2d 469, 478 (7th Cir. 1992) ("deliberate refusal to pursue the best price the broker could obtain can constitute a scheme to defraud" (citation omitted)).[6]

Defendants also base their argument that the superseding indictment fails to allege actual or intended harm on the assumption that, by filing a superseding indictment lacking the original indictment's allegation that Aéropostale paid prices "less favorable to Aéropostale than the prevailing market rate" for South Bay merchandise, the Government has "implicit[ly] admi[tted] that there were no overcharges, as manifested by its withdrawal of that allegation." (Defs.' Rep. in Further Supp. (Doc. No. 51) at 5.)[7] Tellingly, Defendants cite no authority for the proposition that the Government explicitly or implicitly admits to the existence or non-existence of facts when it files a superseding indictment that differs from the original indictment.

---

[6] Defendants complain that the Government has improperly asked the Court to consider facts outside the complaint, such as an e-mail purporting to show that Aéropostale's CEO asked Finazzo to move part of the company's business with South Bay to cheaper, overseas vendors. (Defs.' Rep. in Further Supp. at 3 n.1.) The Court, however, has not relied on such evidence in deciding this motion. In the absence of a full proffer of the government's evidence, "the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *Alfonso*, 143 F.3d at 776–77 (reversing dismissal of indictment where district court "looked beyond the face of the indictment and drew inferences as to the proof that would be introduced by the government at trial" to satisfy an element of the charge).

[7] Defendants rely on these unsupported assumptions throughout their briefs. (*See* Defs.' Rep. in Further Supp. at 2 ("[The superseding indictment] charges only that the purported harm to, or the only property taken from, Aéropostale consisted of lost theoretical opportunities to seek out other vendors to purchase the same goods, or to seek hypothetical lower prices that *even the government now concedes were not actually available, as demonstrated by its removal of overcharge allegations from the original indictment*.") (emphasis added); Defs.' Mem. in Supp. at 6 ("[T]he government has *expressly withdrawn* any allegation that Aéropostale was overcharged for South Bay merchandise. Thus, there can be no dispute that Aéropostale received exactly what it paid for.") (emphasis added).)

Nevertheless, relying on this assumption, Defendants argue that it would not have made a difference economically to Aéropostale whether it purchased merchandise from South Bay or another vendor because the Government has admitted that Aéropostale paid the prevailing market price for South Bay merchandise. (Defs.' Rep. in Further Supp. at 2, 7.) The allegations of harm in the superseding indictment, however, have nothing to do with whether the prices paid by Aéropostale were "less favorable [] than the prevailing market rate." (Original Indictment at ¶ 7.) The original indictment required the Government to demonstrate harm by proving that Aéropostale paid more to South Bay than the "prevailing" market price. (*Id.*) The superseding indictment, however, alleges an entirely different theory of harm: that Defendants caused that Aéropostale forgo seeking *specific* opportunities to pay lower prices, irrespective of the prevailing market rate. (Superseding Indictment at ¶ 7.)

Accordingly, the superseding indictment sufficiently alleges actual or intended harm in alleging that Finazzo caused Aéropostale to purchase merchandise from South Bay, in order to ensure that he continued to receive kickbacks, thereby depriving Aéropostale of the opportunity to seek lower prices.

    b.  *Material Misrepresentation*

Defendants also claim that the misrepresentations alleged in the superseding indictment relate solely to the concealment of Finazzo's self-dealing, and that "Finazzo's interest in the profits of South Bay is without any independent value to Aéropostale and is wholly unrelated to the ultimate value of the numerous transactions between Aéropostale and South Bay." (Defs.' Mem. in Supp. at 10.) This argument is without merit.

"'Materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes.'" *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir. 2000) (quoting *Neder v.*

*United States*, 527 U.S. 1, 25 (1999)). Both affirmative misrepresentations and the omission of information that the defendant has a duty to disclose violate the mail and wire fraud statutes. *See Autuori*, 212 F.3d at 118 (citation omitted). Moreover, "it is just as unlawful to speak half truths or to omit to state facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading." *Id.* (citation and internal quotation mark omitted).

A misrepresentation is material only if "the information withheld either [has] some independent value or [] bear[s] on the ultimate value of the transaction." *Mittelstaedt*, 31 F.3d at 1217; *see also United States v. Rossomando*, 144 F.3d 197, 201 n.5 (2d Cir. 1998); *Cougar Audio, Inc. v. Reich*, 99-CV-4498 (LBS), 2000 U.S. Dist. LEXIS 4894, at *16 n.3 (S.D.N.Y. Apr. 18, 2000) (same). Here, the superseding indictment alleges that Finazzo, who had the power to select vendors and approve prices, concealed his agreement with Dey to use South Bay as vendor in exchange for kickbacks, even as he falsely completed legally-required questionnaires about related party transactions. (Superseding Indictment at ¶¶ 6, 8.) These misrepresentations undoubtedly "bear[] on the ultimate value of the transaction" and "affect the very nature of the bargain itself." *Mittelstaedt*, 31 F.3d at 1217; *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987). Moreover, these allegations necessarily imply the fact that Finazzo misrepresented not only his secret financial interest in South Bay's profits on Aéropostale-South Bay transactions, but also that he purposefully deprived Aéropostale of the opportunity to seek lower-priced merchandise. *See LaSpina*, 299 F.3d at 177 (citation omitted) ("an indictment must be read to include facts which are necessarily implied by the specific allegations made"). The result of Finazzo's misrepresentations is an obvious "discrepancy" between the "benefits reasonably anticipated" by Aéropostale (merchandise purchased at the best available price) and

the "actual benefits received" (higher priced merchandise). *Regent Office Supply Co.*, 421 F.2d at 1182 (2d Cir. 1970) ("fraud in the bargaining may be inferable from facts indicating a discrepancy between benefits reasonably anticipated because of the misleading representations and the actual benefits which the defendant delivered, or intended to deliver"); *see also Starr*, 816 F.2d at 99.

Although it is true that "[m]isrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution [because] the deceit must be coupled with a contemplated harm to the victim," *Starr*, 816 F.2d at 98, the superseding indictment here alleges misrepresentations relating both to deceit *and* harm. Specifically, it alleges that Finazzo falsely denied and failed to disclose that he was receiving kickbacks from South Bay, providing him with a monetary benefit, even as he simultaneously used his executive power to steer business towards South Bay, depriving Aéropostale of opportunities to seek lower-priced merchandise from other vendors, and resulting in pecuniary losses to the company. *See id.* at 101 ("While a finding that defendants garnered some benefit from their scheme may be helpful to the jury to establish motive, it cannot be probative of fraudulent intent unless it results, or is contemplated to result, from a corresponding loss or injury to the victim of the fraud.").

Defendants' reliance on *United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007) in arguing that the alleged misrepresentations are not material is misplaced. In *Shellef*, the Second Circuit explained that:

> [o]ur cases have drawn a fine line between schemes that do no more than cause their victims to enter into transactions they would otherwise avoid – which do not violate the mail or wire fraud statutes – and schemes that depend for their completion on a misrepresentation of an essential element of the bargain – which do violate the mail and wire fraud statutes.

507 F.3d at 108.

The allegations in the superseding indictment, however, do not merely suggest that Aéropostale would have "otherwise avoid[ed]" entering into transactions with South Bay because, for example, Aéropostale would have preferred based on "general principals" not to deal with a company paying secret kickbacks to one of its executives. *Mittelstaedt*, 31 F.3d at 1218 (finding that mail fraud jury instructions were ambiguous because the jury could have found that the victim of the fraud "would have been affected by the disclosure only because the village would have refused to deal with him on general principles"). Instead, the superseding indictment alleges that Aéropostale was economically harmed when Finazzo falsely denied and failed to disclose his secret interest in South Bay even as he caused Aéropostale to enter into transactions with South Bay, thereby furthering his own secret interest and depriving Aéropostale of the opportunity to seek lower prices. From the perspective of Aéropostale, the victim of this alleged fraud, one "essential element of the bargain" is that the terms of the agreements were negotiated at arms' length by a financially disinterested negotiator who was attempting to purchase goods at the lowest price possible. *Shellef*, 507 F.3d at 108. By falsely denying and failing to disclose to Aéropostale that he was receiving kickbacks from one of Aéropostale's main vendors, Finazzo furthered his kickback scheme by misrepresenting this "essential element of the bargain" – that he had no undisclosed interest in South Bay, which, given his authority to select vendors and approve prices, necessarily implied that he would seek the best possible price for merchandise purchased from South Bay. *Id.*; *LaSpina*, 299 F.3d at 177.

Defendants also claim that there was no misrepresentation that bears on the value of the transactions because Aéropostale "received the exact goods and services for which it paid, and at the market price." (Defs.' Repl. in Further Supp. at 7.) However, as discussed above, the

13

Government has not admitted that Aéropostale paid the market price or the best available price for South Bay merchandise. Thus, "[a]lthough [Aéropostale] got something for [its] money – thus there was a quid pro quo – [it was] cheated out of the additional pecuniary benefits which the false representations led [it] reasonably to expect." *Regent Office Supply Co.*, 421 F.2d at 1182. These "additional pecuniary benefits" are the savings associated with the purchase of lower-priced merchandise.

Thus, the allegations in the superseding indictment are sufficient to establish that it is "reasonably probable" that Aéropostale was harmed by paying higher prices for South Bay goods than it otherwise would have if the company had known the truth about the information concealed by Finazzo. *See United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1182 (2d Cir. 1970) (holding that the mail and wire fraud statutes "require evidence from which it may be inferred that some actual injury to the victim, however slight, is a reasonably probable result of the deceitful representations if they are successful").[8] If the fact that an employee responsible for choosing vendors and approving prices receives kickbacks from one of the company's vendors is *not material* to the transactions resulting in kickbacks, it is hard to imagine what information would be material. In short, it is clear that the misrepresentations alleged in the superseding indictment "bear[] on the ultimate value of the transaction," and are therefore material, because Aéropostale "could have negotiated a better deal for itself if it had not been deceived." *Mittelstaedt*, 31 F.3d at 1217 (emphasis in original).

For all of these reasons, Defendants have failed to satisfy the high standard required to dismiss an indictment. *United States v. Kerik*, 615 F. Supp. 2d 256, 262 (S.D.N.Y. 2009).

---

[8] Defendants also rely on *Regent Office Supply Co.* to support their argument that the misrepresentations alleged in the indictment are not material. In that case, the Second Circuit reversed a mail fraud conviction because the "false representations [were] not directed to the quality, adequacy or price of goods to be sold, or otherwise to the nature of the bargain." *Regent Office Supply Co.*, 421 F.2d at 1179. This is plainly not the case here. For the reasons discussed above, the misrepresentations were directly related to the price of the Aéropostale-South Bay transactions and to the nature of the bargain between the two companies.

Dismissal is not warranted here because the conduct alleged in the indictment as a factual basis for the offense is actually prohibited by the mail and wire fraud statutes. *United States v. Aleynikov*, 737 F. Supp. 2d 173, 176 (S.D.N.Y. 2010). The superseding indictment sufficiently alleges violations of 18 U.S.C. §§ 1341, 1343. Accordingly, Defendants' motion to dismiss the superseding indictment is DENIED in its entirety.[9]

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the superseding indictment (Doc. No. 49) is DENIED in full.

SO ORDERED.

Dated: Brooklyn, New York
      August 24, 2011

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge

---

[9] Defendants' motion to dismiss counts one and twenty-seven of the indictment, which are premised on the mail and wire fraud counts, is also DENIED. (Defs.' Mem. in Supp. at 12.)