Robert J.A. Zito (RZ-6990)
Alan S. Lewis (AL-2828)
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York 10005
Tel.: (212) 732-3200

*Attorneys for Mr. Finazzo*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Cr. No. 10-457 (RRM) |
| -against- | : | |
| CHRISTOPHER FINAZZO, | : | |
| Defendant. | : | |

------------------------------------------------------------ X

# MR. FINAZZO'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION TO PRECLUDE EVIDENCE PROFFERED BY THE GOVERNMENT UNDER RULE 404(b)

CARTER LEDYARD & MILBURN LLP
COUNSELORS AT LAW
2 WALL STREET
NEW YORK, N.Y. 10005

(212) 732 - 3200

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES .................................................................................................. ii

I.  The Government Has Failed to Meet Its Burden of Showing That Its Noticed
    Evidence Is Admissible Under Rule 404(b). ...............................................................................1

    A.  The Government's Notice Is Defective Because It Fails to Include Any Evidence
        of an Unlawful or Otherwise Bad Act Committed by Mr. Finazzo While He Was
        Employed by Anchor Blue............................................................................................2

    B.  The Government Has Not Identified a "Close Parallel" Between the Alleged
        Anchor Blue Conduct and the Charged Conspiracy. ....................................................3

    C.  The Alleged Anchor Blue Conduct Is Not Probative of Knowledge, Intent, or
        Absence of Mistake.......................................................................................................5

    D.  The Alleged Anchor Blue Conduct Should Be Excluded Under Rule 403 Because
        Its Probative Value Is Substantially Outweighed by the Risk of Unfair Prejudice,
        Confusion of Issues, and Waste of Time. .....................................................................8

CONCLUSION..............................................................................................................................10

# TABLE OF AUTHORITIES

                                                             **Page(s)**

**CASES**

*United States v. Mills*,
   122 F.3d 346 (7th Cir. 1997) .................................................................................... 8

*Huddleston v. United States*,
   485 U.S. 681 (1988) ...................................................................................... *passim*

*Old Chief v. United States*,
   519 U.S. 172 (1997) ................................................................................................ 9

*United States v. Betts*,
   16 F.3d 748 (7th Cir. 1994) .................................................................................... 8

*United States v. Curley*,
   639 F.3d 50 (2d Cir. 2011) ..................................................................................... 7

*United States v. Edwards*,
   342 F.3d 168 (2d Cir. 1993) ................................................................................... 4

*United States v. Gilan*,
   967 F.2d 776 (2d Cir. 1992) ................................................................................... 3

*United States v. Gilbert*,
   229 F.3d 15 (1st Cir. 2000) .................................................................................. 10

*United States v. Gordon*,
   987 F.2d 902 (2d Cir. 1993) ................................................................................... 4

*United States v. Jiminez*,
   613 F.2d 1373 (5th Cir. 1980) ................................................................................ 8

*United States v. Rhodes*,
   886 F.2d 375 (D.C. Cir. 1989) ............................................................................... 3

*United States v. Stein*,
   521 F. Supp. 2d 266 (S.D.N.Y. 2007) .................................................................... 4

*United States v. Temple*,
   862 F.2d 821 (10th Cir. 1988) ................................................................................ 9

*United States v. Torres*,
   977 F.2d 321 (7th Cir. 1992) .................................................................................. 4

**RULES**

Fed.R.Evid. 403 ....................................................................................................2, 8

Fed.R.Evid. 404(b)..........................................................................................1, 4, 8, 9

Mr. Finazzo submits this reply memorandum of law in further support of his motion in limine to preclude the government from offering, under Rule 404(b), the evidence regarding "Anchor Blue" identified in the government's October 1, 2012 notice.[1] For the reasons described below and in Mr. Finazzo's opening memorandum ("Def.'s Opening Mem."), his motion should be granted.

## I. The Government Has Failed to Meet Its Burden of Showing That Its Noticed Evidence Is Admissible Under Rule 404(b).

In summary and as explained in detail in our opening memorandum, other-act evidence is admissible under Rule 404(b) only if it is (1) offered for a proper purpose, (2) genuinely relevant to an issue actually in dispute, and (3) substantially more probative than prejudicial. *See Huddleston v. United States*, 485 U.S. 681, 691-92 (1988). Here, the government contends that its proffered evidence—*Douglas Dey's* transfer of money in 2008/2009 from South Bay to the account of an entity called Vertical Line—somehow constitutes admissible evidence of *Mr. Finazzo's* state of mind (specifically, his intent to defraud Aéropostale) years earlier, during the 1996-2006 period that is the subject of the indictment. *See* Govt.'s Rule 404(b) Notice at 8-9. But as explained below, the government has neither shown that its proffered Rule 404(b) evidence is an act of Mr.

---

[1] Rule 404(b) explicitly requires the government to give "notice" that sufficiently identifies the evidence it seeks to offer. That requirement enables the defense to make a motion to preclude the evidence of which it is given notice. Clearly, the rule thus contemplates the making of a defense motion. Movants, generally, are afforded an opportunity to reply to the submissions of non-movants. Here, the government labeled its required Rule 404(b) *notice* as an independent motion, making itself the nominal movant and Mr. Finazzo the opponent of the motion—an apparent attempt to deprive Mr. Finazzo of his reply. But because Rule 404(b) requires notice by the government and does not speak to a motion to admit Rule 404(b) evidence from the government, Mr. Finazzo asks that he be treated as the movant and afforded this opportunity to reply. That is why he moved to preclude the noticed evidence, rather than describing his opening memorandum as a response to a government's motion. To the extent the Court nevertheless treats the government as the movant on this issue and requires permission for the filing of this submission, Mr. Finazzo respectfully requests that permission.

1

Finazzo, nor connected the proffered evidence to any issue genuinely in dispute. It has therefore failed to sustain its burden under *Huddleston*. Moreover, even if the proffered evidence has some theoretical relevance to the charges, it should still be excluded under Rule 403 because that relevance is marginal and the evidence is substantially prejudicial. Furthermore, its introduction would cause jury confusion and potentially result in a time-consuming mini-trial.

### A. The Government's Notice Is Defective Because It Fails to Include Any Evidence of an Unlawful or Otherwise Bad Act Committed by Mr. Finazzo While He Was Employed by Anchor Blue.

Other-act evidence is admissible only if the court determines that a jury could reasonably find, by a preponderance of the evidence, "that the act occurred and that *the defendant was the actor*." *Huddleston*, 485 U.S. at 689 (emphasis added). Here, as Mr. Finazzo pointed out in his opening memorandum, the government's notice does not point to any purported bad acts of Mr. Finazzo during his employment with Anchor Blue; Douglas Dey's transfer of money from one bank account Dey controlled to another bank account Dey controlled is not an act *by Mr. Finazzo*. The government's request that the Court *assume* Mr. Finazzo received some of the money Dey transferred between those accounts is not *proof*—by a preponderance or by any standard—that Mr. Finazzo actually received any of it.

Continuing to rely on this undocumented assumption, the government adheres to its claim that Mr. Finazzo's nominal partial ownership of the various Vertical Line Companies somehow makes Dey's act of transferring money to a Vertical Line bank account an act of Mr. Finazzo. But given that Mr. Finazzo did not have any control over the Vertical Line account and did not actually *receive* any of the money earned by South

2

Bay that Dey subsequently transferred into that account—facts the government is unable to controvert—the government's argument is hollow. Although Mr. Finazzo's prior submission pointedly challenged the government to identify a basis for its assumption that Mr. Finazzo received some of the money transferred *by Dey* from one bank account he controlled to another, the government offers nothing other than mere speculation that Mr. Finazzo received some of that money. Such speculation will not do. Because the government has identified no evidence that Mr. Finazzo ever received a penny of the money Dey transferred between accounts that Dey controlled, its proffered evidence fails to satisfy the *Huddleston* requirement that it prove "that the [extrinsic] act occurred and that *the defendant was the actor*." *See Huddleston*, 485 U.S. at 689 (emphasis added); *see also United States v. Gilan*, 967 F.2d 776, 780 (2d Cir. 1992) (reversing conviction because, while the prior incident and the charged crime shared "striking similarities," there was no evidence tying defendant to the prior incident); *United States v. Rhodes*, 886 F.2d 375, 380 (D.C. Cir. 1989) ("Evidence . . . cannot possibly be probative" where the government has not met its burden of showing the defendant's involvement in the alleged extrinsic act.).[2]

### B. The Government Has Not Identified a "Close Parallel" Between the Alleged Anchor Blue Conduct and the Charged Conspiracy.

The government wholly fails to establish a "close parallel" between the Anchor Blue conduct and the crimes charged. As the defense explained in its opening

---

[2] The government asserts that the defense's "reliance on *United States v. Rhodes*" is "misplaced" and spends a half page in its response distinguishing *Rhodes* on its facts. *See* Govt.'s Opposing Mem. at 9-10. But the facts of *Rhodes* do not undermine the relevance of its holding that "[e]vidence . . . cannot possibly be probative when the government has failed to meet its burden of proving the involvement of the defendant in the alleged [extrinsic] bad act." *See Rhodes*, 866 F.2d at 380, *quoted in* Def.'s Opening Mem. at 8.

3

memorandum, *see* Def.'s Opening Mem. at 11, when an extrinsic act is offered to prove a defendant's knowledge of, or intent to commit, the act charged, the government must demonstrate a "close parallel" between the two acts that makes the extrinsic act relevant to the government's asserted purpose. *United States v. Edwards*, 342 F.3d 168, 177 (2d Cir. 1993); *United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993).

In its opposition, the government offers up a laundry list of purported similarities between its claims of what happened during Mr. Finazzo's employment at Anchor Blue and the charges in the indictment. *See* Govt.'s Opposing Mem. at 5-6. But nothing on that list, even when considered in the aggregate, establishes the close parallel required by Rule 404(b). For example, the government notes that Aéropostale and Anchor Blue were both involved in retail-clothing businesses and sold similar products, and that Mr. Finazzo held the same position at both companies. *See* Govt.'s Opposing Mem. at 5. None of those things have any obvious bearing on any purpose for which the Anchor Blue evidence is offered (i.e., intent, knowledge, and lack of mistake). *See United States v. Torres*, 977 F.2d 321, 326 (7th Cir. 1992) (Rule 404(b)'s similarity requirement "means more than sharing some common characteristics; the common characteristics must relate to the purpose for which the evidence is offered.").

Nor does the government explain its claim that its proffered evidence somehow supports an inference that Mr. Finazzo (1) knew "he was abusing his position [at Aéropostale] by receiving payments from a vendor"; (2) "intend[ed] to defraud Aéropostale"; or (3) received funds from South Bay without mistake or accident, Govt.'s Opposing Mem. at 2. *See United States v. Stein*, 521 F. Supp. 2d 266, 270 (S.D.N.Y. 2007) (To establish admissibility, "the government must explain the uncharged

4

transactions, identify similarities between the charged and uncharged transactions, and articulate how the similarities identified support an inference of knowledge or intent.").

Additionally, the government claims that, "[a]t both Aéropostale *and Anchor Blue*," Mr. Finazzo "affirmatively misrepresented and concealed . . . his relationship with Dey." *See* Govt.'s Opposing Mem. at 6 (emphasis added). Beyond these conclusory statements, however, the government cites no evidence tending to prove the conduct that it attributes to Mr. Finazzo during his employment with Anchor Blue.[3] While the government offers documents as proof of this purported misrepresentation at Aéropostale—the disclosure forms that Mr. Finazzo filled out there, which the government has provided in discovery—the government not only has failed to provide the defense with purportedly similar forms filled out by Mr. Finazzo at Anchor Blue, but has told the defense that it does not have any.

### C. *The Alleged Anchor Blue Conduct Is Not Probative of Knowledge, Intent, or Absence of Mistake.*

According to the government, its proffered evidence about events at Anchor Blue in 2008 and 2009 shows that Mr. Finazzo acted with knowledge and the intent to defraud Aéropostale when, years earlier, he received part of the profits South Bay earned from its sales to Aéropostale. The government's argument is fatally flawed. As described above, the government is unable to point to *any* evidence that Mr. Finazzo received *any* money that South Bay earned from its sales to Anchor Blue. Given the lack of evidence that Mr.

---

[3] Contrary to the government's assertion, Mr. Finazzo does not challenge the similarity of the Anchor Blue conduct on the grounds that, in 2008 and 2009, "South Bay transferred money to the Vertical Line[] entities, rather than to C&D [Retail Consultants, Inc.]." Govt.'s Opposing Mem. at 5 n.2. Rather, as explained above, the Anchor Blue conduct lacks a close parallel to the conduct charged because Mr. Finazzo did not actually receive any of the money Dey transferred in 2008 and 2009 between bank accounts Dey controlled.

5

Finazzo received any money from South Bay during the Anchor Blue years, the proffered evidence does not prove anything about Mr. Finazzo's intent to defraud Aéropostale.

As the government acknowledges, "whether Finazzo intended to defraud Aéropostale" is "the real issue." Govt.'s Opposing Mem. at 3 (internal quotation marks omitted). But in order to have intended to do so, Mr. Finazzo must have intended to deprive Aéropostale of money or property, by causing Aéropostale to get a bad deal on its purchases from South Bay. Because the terms of *Aéropostale's* purchases from South Bay were not the same as the terms of *Anchor Blue's* purchases from South Bay, the relationship between Anchor Blue and South Bay sheds no light on whether Mr. Finazzo intended to defraud Aéropostale by causing it to transact business with South Bay on the unique terms of those transactions.

Trying to plug the hole in its argument created by its lack of evidence that Mr. Finazzo shared in South Bay's profits from sales to Anchor Blue, the government argues that "even if Finazzo's assertions [that he did not receive any money earned by South Bay from sales to Anchor Blue] are true," Dey's transfer of money to the Vertical Line Companies is admissible as an act "in furtherance of the conspiracy." *See* Govt.'s Opposing Mem. at 10 n.4. However, because Mr. Finazzo did not get any of the money South Bay earned from Anchor Blue, that means that there was no conspiracy. That is, the nature of the claimed Anchor Blue conspiracy, allegedly, was for Finazzo and Dey to secretly share the profits South Bay earned from its sales to Anchor Blue. If they did not share those profits, there was no conspiracy to further. In other words, Dey's *not sharing* with Mr. Finazzo the profits South Bay made from its Anchor Blue sales does not further a conspiracy *to share* those profits.

6

If the government (at page 10, note 4 of its response submission) is claiming that Dey's transfer of money in 2008 and 2009 are acts in furtherance of the charged *Aéropostale* conspiracy that ended in 2006, its argument is equally illogical. Events that took place years *after* that purported conspiracy ended, even if bearing some similarities to the kinds of acts committed in its furtherance, cannot be acts of furtherance of the concluded conspiracy. Moreover, Dey's bank transfers of money earned by South Bay from sales to Anchor Blue could not further a conspiracy to defraud Aéropostale.

The relevance of the Anchor Blue events is further undermined by the fact that those events took place years *after* Mr. Finazzo's employment was terminated by Aéropostale. Mr. Finazzo's conduct at Anchor Blue in 2008 and 2009 does not logically shed light on whether he intended to harm Aéropostale, in the period ending two or three years earlier in *2006*, by causing Aéropostale to purchase goods and services from South Bay on terms that were purportedly not advantageous to Aéropostale. *See United States v. Curley*, 639 F.3d 50, 61 (2d Cir. 2011) ("[T]he temporal difference between the charged conduct and the subsequent acts may impact whether the evidence is probative.").

The government has little to say on this common-sense point. Instead, it recites the general proposition that other-act evidence is not per se inadmissible because it occurred after the offense charged. *See* Govt.'s Opposing Mem. at 6. What the government fails to explain, however, is *how* the Anchor Blue evidence supports an inference that Mr. Finazzo acted fraudulently, at a different employer, two-plus years earlier, with regard to South Bay's sales to Aéropostale on unique terms.

In sum, the government hopes that, by showing that Mr. Finazzo referred Anchor Blue to South Bay, similar to his referral of Aéropostale to South Bay (even though he received no monetary benefit for referring Anchor Blue), the jury will infer a nefarious purpose and conclude that Mr. Finazzo's Aéropostale conduct was also nefarious. In other words, the government's real purpose for offering the Rule 404(b) evidence is, impermissibly, to create an impression of propensity.

### D. The Alleged Anchor Blue Conduct Should Be Excluded Under Rule 403 Because Its Probative Value Is Substantially Outweighed by the Risk of Unfair Prejudice, Confusion of Issues, and Waste of Time.

Even if there were a purpose for introducing the Anchor Blue evidence other than to show Mr. Finazzo's propensity, the evidence should still be precluded because its probative value is quite minimal while its prejudicial potential is great. Any probative value is extremely minimal for the reason repeatedly emphasized—without proof that Mr. Finazzo actually received any of the money South Bay earned from Anchor Blue, Dey's interbank transfers say nothing about Mr. Finazzo's knowledge of or intent to do anything. *See Huddleston v. United States*, 485 U.S. 681, 689 (1988) ("The strength of the evidence establishing the similar act is one of the factors the court may consider when conducting the Rule 403 balancing."). Moreover, Mr. Finazzo's alleged acts *after* the charged conduct proves very little about what Mr. Finazzo knew or intended years earlier.[4]

---

[4] *See, e.g., United States v. Betts*, 16 F.3d 748, 758 (7th Cir. 1994) ("[B]y the time [defendants] were arrested [on marijuana charges,] . . . the conspiracy . . . had been defunct for between eighteen months and two years. How and why [defendants] came to possess [marijuana] . . . at the time of their arrest . . . . offers no insight into what [defendants'] knowledge and intent was years earlier."), *abrogated in part on other grounds by United States v. Mills*, 122 F.3d 346 (7th Cir. 1997); *United States v. Jiminez*, 613 F.2d 1373, 1376 (5th Cir. 1980) ("A year had lapsed between the heroin deal and appellant's alleged cocaine possession. Although we do not

Whatever negligible probative value the evidence might have would be substantially outweighed by the danger of unfair prejudice to Mr. Finazzo. Where, as here, "weak circumstantial evidence of prior bad acts is admitted under Rule 404(b), there is an inherent danger of prejudice to the defendant." *United States v. Temple*, 862 F.2d 821, 824 (10th Cir. 1988). The proffered 404(b) evidence would invite the jury to base its decision "on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Here, the jury would be tempted to find Mr. Finazzo guilty based on the uncharged extrinsic acts, rather than the conduct charged in the indictment. The genuine risk that the extrinsic evidence will cause the jury to make its determination on improper reasoning warrants its exclusion.

Additionally, introduction of the Anchor Blue evidence would significantly lengthen the trial. The government's argument otherwise focuses only on the amount of time it claims it would devote to the presentation of this evidence, ignoring the substantial time *the defense* would devote to challenging the Rule 404(b) evidence and the inferences the government urges from that evidence. The government is likely underestimating the impact that admission of this evidence would have on its own case, as it must put on enough evidence to allow a jury to find that Mr. Finazzo actually knew about and received the money deposited by Dey into a bank account Dey controlled. *See Huddleston*, 485 U.S. at 689. Moreover, Mr. Finazzo's opening memorandum explained why the response of the defense to introduction of this evidence, including lengthy cross-examination and the presentation of additional defense evidence, would indeed result in a lengthened trial, *see* Def.'s Opening Mem. at 15-17—an argument to which the

---

suggest that subsequent extrinsic evidence could never be admitted under [R]ule 404(b), it certainly bears substantially less on predisposition than would a prior extrinsic offense.").

government never responds. Indeed, the dispute over whether any bad act actually occurred at Anchor Blue has substantial potential to generate a mini-trial. *See United States v. Gilbert*, 229 F.3d 15, 24 (1st Cir. 2000) (excluding evidence of another offense when it was contested by the defendant because it was "nearly certain that there would be a mini-trial on whether the [offense] actually took place").

## CONCLUSION

For the reasons delineated above, as well as those stated in our opening memorandum of law, this Court should grant Mr. Finazzo's motion to preclude evidence of his conduct at Anchor Blue.

Dated: New York, New York
January 17, 2013

CARTER LEDYARD & MILBURN LLP

By: *[signature]*
Alan S. Lewis
2 Wall Street
New York, NY 10005
Tel: (212) 732-3200

*Attorneys for Mr. Finazzo*