UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
UNITED STATES OF AMERICA,

    - against -

CHRISTOPHER FINAZZO and
DOUGLAS DEY,
                Defendants.
------------------------------------------------------------X

**MEMORANDUM AND ORDER DENYING MOTION TO DISMISS THE SECOND SUPERSEDING INDICTMENT**
10-CR-457 (RRM)(RML)

ROSLYNN R. MAUSKOPF, United States District Judge.

      Christopher Finazzo and Douglas Dey ("defendants") are charged by second superseding indictment ("S-2") with multiple counts, including (i) conspiracy to commit mail fraud and wire fraud and conspiracy to violate the Travel Act (Count One); (ii) mail fraud (Counts Two through Fifteen); and (iii) wire fraud (Count Sixteen). (Doc. No. 62.) Finazzo is also charged with making a false statement in a report required to be filed with the United States Securities and Exchange Commission (Count Seventeen). (*Id.*) Defendants move to dismiss portions of Counts One through Sixteen of the second superseding indictment. (Doc. No. 69.) For the reasons set forth below, defendants' motion is DENIED.

## BACKGROUND

      The Court assumes the parties' familiarity with the factual background and procedural history of the case, and will address only those aspects that are relevant to the instant motion. By superseding indictment ("S-1"), filed December 14, 2010, the government charged a "[f]raudulent [s]cheme" in which Finazzo, an executive at the clothing retailer Aéropostale, Inc. ("Aéropostale"), secretly received fifty percent of the profits from certain transactions between Aéropostale and South Bay Apparel, Inc. ("South Bay"), a clothing vendor controlled by Dey. (S-1 (Doc. No. 44) at ¶ 7.) As a "result of the agreement, the defendants deprived Aéropostale

both of the opportunity to seek lower prices for merchandise it purchased from South Bay and the opportunity to purchase that merchandise from other vendors." (*Id.*)

On March 4, 2011, defendants moved to dismiss portions of S-1, alleging that "no offense is stated" because the superseding indictment "does not allege that Aéropostale was harmed through the deprivation of money or property or that either defendant made any misrepresentations relating to the value of the goods and services that South Bay sold to Aéropostale." (Defs. SI Mem. (Doc. No. 49) at 5-6.) By Order dated August 24, 2011, this Court denied defendants' motion. The Court determined that "[a]lthough the superseding indictment alleges only that Aéropostale was deprived of the 'opportunity' to 'seek' lower prices, it is necessarily implied that lower prices existed and were available to Aéropostale" and therefore, as a result of Finazzo "steer[ing] Aéropostale towards purchasing as much merchandise from South Bay as possible, and at the highest possible price," Aéropostale's "costs were inflated, its profits suffered, and its shareholders were economically harmed." (Order (Doc. No. 59) at 8-9.) Further, S-1 adequately alleged material misrepresentations because Finazzo's concealment of his "secret financial interest" created an "obvious 'discrepancy' between the 'benefits reasonably anticipated' by Aéropostale (merchandise purchased at the best available price) and the 'actual benefits received' (higher priced merchandise)." (*Id.* at 11-14.) Therefore, Aéropostale was harmed by paying "higher prices for South Bay goods than it otherwise would have if the company had known the truth." (*Id.*)

On September 6, 2011, the government filed a second superseding indictment ("S-2") alleging essentially the same scheme. (Doc. No. 62.) S-2 charges that Finazzo and Dey "defrauded" Aéropostale by, "(1) depriving Aéropostale of the opportunity to make informed decisions, thereby preventing Aéropostale from seeking lower prices for merchandise it

2

purchased from South Bay and the opportunity to select other vendors based upon price, quality and timely delivery; and (2) causing Aéropostale to pay higher prices on merchandise it purchased from South Bay than were available from other vendors, thereby increasing South Bay's profits and the amounts Dey paid Finazzo." (S-2 at ¶ 9.) Further, S-2 alleges that "Finazzo repeatedly rebuffed requests . . . to move a portion of the t-shirt business from South Bay to an overseas vendor that could provide the t-shirts for a significantly lower price" and that Finazzo rejected a specific alternative vendor that would have saved Aéropostale approximately $300,000 as compared to placing an order with South Bay. (*Id.*)

Presently before the Court is defendants' latest motion to dismiss the second superseding indictment. The briefing of this motion took place in multiple stages, both before defendants requested a bill of particulars and after additional discovery resolved their request. (Doc. Nos. 69, 71, 72, 99, 102, 104.)

**LEGAL STANDARD**

Under Federal Rule of Criminal Procedure 7(c)(1), an indictment need only track the language of the statute charged and state the time and place of the alleged crime. *United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

Under Federal Rule of Criminal Procedure 12(b), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). "The general issue in a criminal trial is, of course, whether the

defendant is guilty of the offense charged." *United States v. Doe*, 63 F.3d 121, 125 (2d Cir. 1995) (citations omitted).

Federal criminal procedure does not provide for pretrial determination of the sufficiency of the evidence: "[t]here is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context." *See, e.g.*, *United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005). Rule 12 was not intended to permit motions requiring consideration of facts outside the pleadings because, if that were allowed, the "pretrial motion could be turned into a trial of the general issue." 1A Charles Alan Wright & Andrew D. Leipold, Federal Practice and Procedure Criminal § 194 (4th ed. 2008). Thus, in the absence of a full proffer of the government's evidence, "the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *Alfonso*, 143 F.3d 776-77. When there has been no such proffer, in deciding a motion to dismiss, the Court must consider only whether the allegations of the indictment, taken as true, are sufficient to establish a violation of the charged offense. *United States v. Sampson*, 371 U.S. 75, 78-79 (1962).

**DISCUSSION**

The government must satisfy three elements to secure a conviction for mail fraud or wire fraud: (1) a scheme to defraud victims of (2) money or property through the (3) use of the mail.[1] *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004). In order to satisfy the first two elements, the indictment must charge actual or contemplated harm, to "money or property" based on a material misrepresentation. *See United States v. Walker*, 191 F.3d 326, 335 (2d Cir. 1999) ("The first element focuses on the intent to harm; the second element is concerned with the precise nature of the harm, and requires that the harm be concrete."); *United States v. Autuori*,

---

[1] The mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, "use the same relevant language, [and] are analyzed in the same way." *United States v. Slevin*, 106 F.3d 1086, 1088 (2d Cir. 1996).

4

212 F.3d 105, 118 (2d Cir. 2000) ("Materiality of falsehood is an element of federal mail fraud, wire fraud, and bank fraud statutes." (quoting *Neder v. United States*, 527 U.S. 1, 25 (1999)).

Defendants argue that both of the charges in S-2, that Finazzo and Dey deprived Aéropostale of the "opportunity to make informed decisions" and that Finazzo and Dey caused Aéropostale to "pay higher prices," fail to state an offense. (Defs. S-2 Mem. (Doc. No. 69) at 1-2.) They challenge the first charge, what they call the "lost opportunity" charge, as failing to allege "a deprivation of money or property that can constitute an offense" or a material misrepresentation. (*Id.*) They challenge the second charge as being overly "broad" because it fails to give "sufficient notice of what money or property the defendants supposedly deprived Aéropostale." (*Id.* at 2.) In addition, following a series of conferences resolving a bill of particulars before Magistrate Judge Levy, defendants supplement their motion to dismiss the so-called "lost opportunity" charge based on a statement made by the government to Judge Levy. (Defs. Supp. Mem. (Doc. No. 99).)

For the reasons that follow, the Court finds the indictment sufficiently states all of the charges and declines to dismiss a facially sufficient indictment based on a statement made by the government at a court conference.

**I.    The "Lost Opportunity" Charge**

Defendants challenge the "lost opportunity" charge as pled in S-2 both for failing to allege contemplated harm to money or property and for failing to allege the withholding of material information.[2]

---

[2] First, The so-called "lost opportunity" charge is undoubtedly sufficient on its face. It sets forth a detailed description and the approximate time of defendants' alleged wrongful acts; the fraudulent scheme allegedly took place between August 1996 and November 2006. (S-2 at ¶¶ 8-11.) Tracking the language of 18 U.S.C. §§ 1341 and 1343, respectively, S-2 states that defendants' acts and mental states met the elements of the offenses set out. Defendants are sufficiently informed of the charges against them and have adequate information to plead double jeopardy as a defense under the Fifth Amendment. Therefore, these charges are facially valid. *See Alfonso*, 143 F.3d at 776.

Defendants' brief evinces more than a slight sense of a déjà vu - - they raise the same arguments made when seeking to dismiss the first superseding indictment, often even word-for-word. Such similarity comes as no surprise given that the "lost opportunity" charge in S-2 is quite similar to the "lost opportunity" charge in S-1, a charge that this Court already found sufficient. (*Compare* S-2 at ¶ 9 *with* S-1 at ¶ 7.) Defendants have not suggested that any material difference between the first and second superseding indictments merits a departure from the Court's previous decision. Indeed, there is none.

Therefore, defendants' motion is DENIED for substantially the same reasons expressed in this Court's Order of August 24, 2011. Nevertheless, the Court will briefly summarize why the "lost opportunity" charge in S-2 is sufficient.

### a. *Actual or Contemplated Harm*

An indictment charging mail or wire fraud must allege that "some actual harm or injury was contemplated by the schemer." *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1180 (2d Cir. 1970). Moreover, that harm must be to "property right[s]." *McNally v. United States*, 483 U.S. 350, 360 (1987); *see also United States v. Carlo*, 507 F.3d 799, 801-802 (2d Cir. 2007) (finding that the "interests protected" by the wire and mail fraud statutes "extend to all kinds of property interests, both tangible and intangible").

The S-2 "lost opportunity" charge alleges that Finazzo and Dey contemplated harm to Aéropostale. The second superseding indictment charges that Finazzo and Dey entered into a secret agreement whereby Finazzo would receive kickbacks for Aéropostale's business with Dey's company, South Bay. (S-2 at ¶ 8.) Finazzo then used his position at Aéropostale to cause it to purchase from South Bay "without regard to the price, quality or timely delivery of the merchandise." (S-2 at ¶¶ 3, 8.) Finazzo concealed from Aéropostale that he was entering into

6

these transactions without regard to its interest, so that Aéropostale would be unable to make an "informed decision" about its purchasing, "thereby preventing Aéropostale from seeking lower prices" from South Bay or "select[ing] other vendors based upon price, quality and timely delivery." (S-2 at ¶¶ 8-10.) The indictment buttresses its allegations of Finazzo's intention to harm Aéropostale by providing examples of his hostile and dismissive reactions to any employee who either questioned South Bay, or who proposed ways Aéropostale could get a better deal by switching to another vendor. (S-2 at ¶¶ 9, 14.)

These allegations are consistent with the well-established proposition that the "interest of a victim in controlling his or her own assets" is a "property interest[] protected" by the mail and wire fraud statutes. *Carlo*, 507 F.3d at 802; *see also United States v. Wallach*, 935 F.2d 455, 462-63 (2d Cir. 1991) (stating that the "withholding or inaccurate reporting of information that could impact on economic decisions can provide the basis for a mail fraud prosecution"). An indictment adequately charges mail or wire fraud where, as here, it alleges that a deprivation of such control "can or does result in some tangible harm." *United States v. Mittelstaedt*, 31 F.3d 1208, 1217 (2d Cir. 1994). Despite defendant's insistence to the contrary, S-2 does not allege that Aéropostale's "lack of information" had only "an impact on the decision regarding where [Aéropostale's] money [was] spent." *Id.* Rather, S-2 alleges more, that is, "that the omission caused (or was intended to cause) actual harm." *Id.*

The second superseding indictment charges that Finazzo misled Aéropostale as to the fairness of its transactions with South Bay and that he actively prevented it from looking at other vendors or negotiating with South Bay for lower prices. (S-2 at ¶¶ 8-10, 14.) Those allegations "necessarily impl[y]" that he believed other vendors offered a better value to Aéropostale or that Aéropostale could get a better deal from South Bay. *LaSpina*, 299 F.3d at 177. That is, Finazzo

7

had to mislead Aéropostale as to his agreement to purchase from South Bay "without regard to price, quality or timely delivery" because he knew that other vendors, or South Bay itself, might otherwise offer a better deal. (S-2 at ¶¶ 8-10, 14.) As alleged, Finazzo knew from Aéropostale's CEO that Aéropostale was interested in lowering its purchasing costs, but deprived it of exploring other opportunities because any better deal would reduce or end his kickbacks. (*Id.*) Therefore, S-2 adequately alleges that by depriving Aéropostale of its right to control its purchasing, Finazzo contemplated tangible harm to Aéropostale by inflating its costs and lowering its profits.[3]

Defendants repeatedly attack S-2 for charging only the loss of "hypothetical" or "theoretical" opportunities and argue that there must be "actual[] harm[]," proof that Aéropostale was "*actually* overcharged," or that lower prices were "actually available." (*See, e.g.*, Defs. S-2 Mem. at 7, 9, 11, 14.) Defendants' argument is both a premature challenge to the sufficiency of the evidence and an extremely cramped reading of the wire and mail fraud statutes and the allegations contained in S-2.

The "critical element in a 'scheme to defraud' is 'fraudulent intent,' and therefore the accused need not have succeeded in his scheme to be guilty of a crime." *Regent*, 421 F.2d at 1180 (citation omitted); *see also United States v. Shellef*, 507 F.3d 82, 107-108 (2d Cir. 2007) ("Although the indictment need not allege that the victims of the fraud were in fact injured, it is required to allege that the defendant contemplated actual harm that would befall victims due to his deception."). While "proof that someone was actually victimized by the fraud is good

---

[3] Defendants quibble with the Court's previous assertion that the payment of the kickback suggests that it is plausible that lower prices were available. (Order at 8 n.4 ("It is difficult to imagine that South Bay would not have offered the merchandise at a price marked down at least by an amount equal to the amount of the kickback."); Defs. S-2 Mem. at 11.) The Court did not and does not suggest that a kickback in and of itself proves harm. That is not the theory of the indictment, nor is the government required to "prove" harm at this point. Rather, a kickback "theoretically could support a mail fraud conviction if [it] inflated the cost [of the merchandise purchased by Aéropostale]." *Mittelstaedt*, 31 F.3d at 1220.

evidence of the schemer's intent," it is "the purpose of the scheme" that is paramount. *Regent*, 421 F.2d at 1181. Whether there were or were not better deals available to Aéropostale is only relevant in so far as it informs whether Finazzo and Dey contemplated tangible harm to the company. The S-2 adequately alleges that they did, and defendants lose sight of this distinction when they insist that Aéropostale must have been actually harmed. While defendants may be ultimately correct that the government will be hard-pressed to prove intent without demonstrating "actual harm," the Court expresses no opinion on how the government should prove its case - - sufficiency of the evidence is a matter to be resolved at trial. *Alfonso*, 143 F.3d 776-77.

### b. *Material Misrepresentation*

"Materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes." *See Autuori*, 212 F.3d at 118 ("The fraud statutes are violated by affirmative misrepresentations or by omissions of material information that the defendant has a duty to disclose."). To be "material" the information withheld must be "of some independent value or must bear on the ultimate value of the transaction." *Mittelstaedt*, 31 F.3d at 1217. The misrepresentation must go to an "essential element of the bargain" and be "directed to the quality, adequacy or price of goods to be sold, or otherwise to the nature of the bargain." *Shellef*, 507 F.3d at 108 (quoting *Regent*, 421 F.2d at 1179).

Defendants argue, as before, that the only misrepresentation alleged in S-2 - - Finazzo's self-dealing - - is of no "independent value" and is "wholly unrelated to the ultimate value" of the transactions between Aéropostale and South Bay. (Defs. S-2 Mem. at 12.) This position, as addressed in this Court's previous Order, is without merit. (Order at 10-14.)

9

Particularly, defendants' reliance on *Shellef* and *Regent* is misplaced. (Defs. S-2 Mem. at 13-14.) In *Shellef*, the defendant misrepresented his intended market for a product he purchased from the purported victim. 507 F.3d at 109. In *Regent*, the defendant misrepresented its identity in order to secure a meeting with the purported victims. 421 F.2d at 1176. Those misrepresentations were not material because they did not relate to an "essential element" of the bargain, were little more than "fraudulent inducements to gain access," and only "cause[d] their victims to enter into transactions they would otherwise avoid." *Shellef*, 507 F.3d at 108-109.

To the contrary, as alleged here, the victim, Aéropostale, entered into contracts with South Bay under the assumption that Finazzo was negotiating on its behalf, and would, therefore, negotiate the best possible value for Aéropostale - - an "essential element of the bargain" to Aéropostale if there ever was one. *Shellef*, 507 F.3d at 108. Unbeknownst to Aéropostale, Finazzo allegedly was doing nothing of the sort, and, instead, he had every incentive to negotiate a higher price for South Bay, thereby increasing his own profits. While this may have meant that the ultimate contract between Aéropostale and South Bay was fulfilled as written, it is wholly inappropriate to divorce the final contract from the deception involving an "essential element" underpinning that bargain, deception that the government alleges undoubtedly affected the "ultimate value" of that contract. Indeed, as previously explained, "[i]f the fact that an employee responsible for choosing vendors and approving prices receives kickbacks from one of the company's vendors is *not material* to the transactions resulting in kickbacks, it is hard to imagine what information would be material." (Order at 14.)

## II. The "Higher Prices" Charge

The second superseding indictment also charges that the fraud perpetrated by Finazzo and Dey caused "Aéropostale to pay higher prices on merchandise it purchased from South Bay than

10

were available from other vendors." (S-2 at ¶ 9.) Defendants cautiously admit that such an allegation "could conceptually be a deprivation of money or property." (Defs. S-2 Mem. at 2.) Indeed, as pled, this charge clearly articulates "tangible harm" - - that Aéropostale was deprived of material information bearing on "the ultimate value of the transaction," information that Aéropostale could have used to "negotiate[] a better deal." *Mittelstaedt*, 31 F.3d at 1217.

Instead, defendants argue that, given the "$350 million in transactions between Aéropostale and South Bay over a ten-year period," S-2 is impermissibly vague on this point because it does not state "what prices were available from which vendors and for what merchandise and services." (Defs. S-2 Mem. at 2.) This argument has no merit.

The second superseding indictment clearly charges significantly more than necessary. Again, an indictment is sufficient if it does "little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Alfonso*, 143 F.3d at 776. The second superseding indictment not only tracks the language of the relevant statutes, it also sets out a detailed description of the scheme, including its purpose, wrongful acts comprising the scheme as well as when they were committed and the business entities used, the amount of money involved, the victim and specific instances in which defendants carried out their scheme. (S-2 at ¶¶ 8-11, 14.) These "factual specifics are sufficient to provide defendant[s] with adequate notice of the charges, allow [them] to prepare [their] defense, and ensure that [they are] not prosecuted based on evidence not presented to the grand jury." *United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999).

The lack of specificity complained of by defendants goes not to what fraudulent scheme the indictment charges, but rather, to how the government intends to prove its case. An indictment does not need to plead those sort of specifics as, "[r]ecognizing that particular facts

11

needed in particular cases are obtainable by bills of particulars or discovery, we have repeatedly refused, in the absence of any showing of prejudice, to dismiss . . . charges for lack of specificity." *Id.* (quoting *United States v. McClean*, 528 F.2d 1250, 1257 (2d Cir. 1976)). There has been substantial discovery and extensive litigation before the magistrate judge regarding particulars of the scheme, and defendants can show no prejudice from an indictment as detailed as this.[4]

### III. Supplemental Motion to Dismiss

In their supplemental submission, defendants also seek dismissal of the "lost opportunity" charge based on the government's alleged disclosure, during a conference before Judge Levy, "that no tangible 'money or property' was taken from Aéropostale." (Defs. Supp. Mem. at 1-2.) Defendants apparently infer this remarkable admission from the following colloquy:

> MR. KINGHAM: Your Honor, the essential question is, of what property, of what money or property was Aéropostale allegedly defrauded?
>
> [. . . ]
>
> MR. PAES: The kickbacks [are] the property, your Honor. That's what Aéropostale was deprived of, the kickbacks that Mr. Finazzo received from Southbay.

(*Id.*; 2/17/12 Bill of Particulars Hr'g Tr. at 27.)

Defendants argue that "as a matter of law under 18 U.S.C. § 1341, so-called 'kickbacks' cannot constitute 'money or property' of which an alleged victim is deprived." (Defs. Supp. Mem. at 2.)

Initially, as noted above, the indictment is sufficient on its face. Whether the proof the government intends to present will ultimately support a conviction is a question of sufficiency of

---

[4] For example, on January 10, 2012, the government provided defendants with the "emails and documents" it "intends to rely on at trial." (Gov. Letter (Doc. No. 83) at 1.) It also has previously informed defendants of the "vendors who competed with South Bay for t-shirt and/or fleece merchandise." (*Id.* at 2.)

the evidence, which is reserved for trial. It is well settled that "[u]nless the government has made what can fairly be described as a full proffer . . . the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *Alfonso*, 143 F.3d at 776-77. One remark by the government at a discovery conference hardly constitutes a full proffer. *See id.* ("The government's brief statement during oral argument on its motion for reconsideration . . . cannot be fairly described as a full proffer for purposes of a pretrial ruling on the sufficiency of the evidence."); *United States v. Yaron*, No. S2-10-CR-363 (GBD), 2011 WL 3279054, at *2 n.4 (S.D.N.Y. Jul. 28, 2011) ("Though the Court has heard argument on the parties' motions, this cannot be said to constitute a full proffer. . . . Thus, the Court will not consider here the government's evidence in determining the sufficiency of its allegations." (citations omitted)). Indeed, the totality of the government's remarks suggest its case, and the evidence offered, will not be limited to simply proving a kickback arrangement. (Gov. Supp. Opp'n Mem. (Doc. No. 102) at 4-6.)

Moreover, even if defendants were correct that the payment of a kickback, alone, would be insufficient, that is not what the indictment alleges and that is not what the Court takes the government to mean by its statement. Rather, as reviewed above, the so-called "lost opportunity" charge sufficiently alleges that by depriving Aéropostale of "the opportunity to make informed decisions" about its purchasing, Finazzo and Dey intended to harm Aéropostale. (S-2 at ¶ 9; *see also supra* at 7-8.) The government's statement that "[t]he kickbacks [are] the property" is entirely consistent. (2/17/12 Bill of Particulars Hr'g Tr. at 27.) That is, by depriving Aéropostale of the right to make informed decisions about its purchasing, and instead directing that purchasing to South Bay "without regard to the price, quality or timely delivery of the merchandise," Finazzo redirected Aéropostale's property to himself in the form of kickbacks.

(S-2 at ¶¶ 8-9.) That the payments came to Finazzo through South Bay does not change the fact that the kickbacks were Aéropostale's fraudulently taken money or property.

Defendants' citations to *Mittelstaedt*, *Skilling* and *McNally* only confirm the sufficiency of the indictment. (Defs. Supp. Mem. at 3-4.) Despite defendants' statements to the contrary, none of those cases stand for the proposition that kickbacks are not "money or property." Rather, kickbacks are only "money or property" where there has been a showing that they are connected to actual or contemplated harm to the victim, i.e., the property would otherwise have remained with the victim. In *Mittelstaedt*, the Second Circuit determined that a bribe in connection with a real estate transaction "theoretically could support a mail fraud conviction if [it] inflated the cost of the property to the town," but overturned the conviction because that "theory [was] nowhere mentioned in the indictment, was not argued to the jury, and was not addressed in the jury charge." 31 F.3d at 1219-20. In *Skilling v. United States*, the Supreme Court reviewed its holding in *McNally*, which had rejected a wire fraud charge regarding a kickback scheme because it had solely alleged that a state official defrauded citizens of their " 'right to have the Commonwealth's affairs conducted honestly.' " 130 S. Ct. 2896, 2927 (2010) (quoting *McNally*, 483 U.S. at 353). The Court went on to note, however, that the prosecutor "did not charge that, 'in the absence of the alleged scheme[,] the Commonwealth would have paid a lower premium or secured better insurance.' " *Id.* (quoting *McNally*, 483 U.S. at 360).

Here, the indictment charges that Finazzo contemplated harm to Aéropostale by directing its purchasing "without regard to the price, quality or timely delivery of the merchandise" in order to finance kickbacks to himself with Aéropostale's property. (S-2 at ¶¶ 8-9.) Again, even if the defendants were correct when they suggest that more than just the existence of the

14

kickback arrangement must be proven, the indictment alleges more, and the government has never suggested otherwise.

Finally, and perhaps reinforcing why courts do not dismiss indictments based on a single statement at a status conference, the Court does not view the government's statement as precluding the broader "money or property" identified by the indictment. As discussed *supra*, the indictment more than adequately alleges that by depriving Aéropostale of its right to control its purchasing, defendants contemplated tangible harm to Aéropostale by inflating its costs and lowering its profits. (*Supra* at 7-8.) The indictment does not limit the amount Aéropostale was defrauded of to the amount of the kickbacks Finazzo received. And the government referencing kickbacks as an example of "money or property" taken from Aéropostale does nothing to contradict that - - especially in light of its many other concurrent representations entirely consistent with the broader theory. (Gov. Supp. Opp'n Mem. at 4-6.)

Therefore, defendants' supplemental motion to dismiss is also DENIED.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the second superseding indictment (Doc. Nos. 69, 99) is DENIED in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
February 18, 2013

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge

15