Robert J.A. Zito (RZ-6990)
Alan S. Lewis (AL-2828)
Karen E. Meara (KM-1944)
CARTER LEDYARD & MILBURN LLP
Two Wall Street
New York, NY 10005
Tel.: (212) 732-3200

*Attorneys for Defendant Christopher Finazzo*


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                                           :
UNITED STATES OF AMERICA,                                  :      Cr. No. 10-457 (RRM)
                                                           :
            -against-                                      :
                                                           :
CHRISTOPHER FINAZZO,                                       :
                                                           :
                              Defendant.                   :
-----------------------------------------------------------X


# MR. FINAZZO'S OBJECTIONS TO GOVERNMENT'S REQUESTS TO CHARGE AND HIS FIRST SUPPLEMENTAL REQUESTS TO CHARGE

## PRELIMINARY STATEMENT

At the heart of this case is Mr. Finazzo's alleged nondisclosure of his interest in the profits of South Bay Apparel, Inc. ("South Bay"), a vendor of Aéropostale, Inc. ("Aéropostale"). Nondisclosure of a possible related party transaction by an officer of a company is potentially a civil breach of fiduciary duty.  But no violation of the mail and wire fraud statutes is committed unless the government proves beyond a reasonable doubt, among other things, that the officer intended to cause actual pecuniary damages to the company, as repeatedly stressed by the United States Supreme Court and the Second Circuit in *United States v. McNally*, 483 U.S. 350 (1984), and *United States v. Mittelstaedt*, 31 F.3d 1208 (2d Cir. 1994), respectively.

The government's requested charges, if given, would transform breach of fiduciary duty into a crime, contrary to well-settled legal precedent. The fatal flaw in the government's proffered charges is that they permit the jury to convict Mr. Finazzo on all charges based solely on his alleged nondisclosure and receipt of funds, even though the relationship between Aéropostale and South Bay was benign and resulted in hundreds  of millions of dollars in profits to Aéropostale.  Related-party transactions are not *per se* illegal, and indeed, under Delaware law—the state under which Aéropostale was incorporated—even civil charges for breach of fiduciary duty must be dismissed if the transaction at issue meets the entire fairness test. *See Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983).  So long as a transaction is fair from a financial point of view, a party is precluded from seeking actual damages. *See Zoren v. Genesis Energy LP*, 836 A.2d 521, 531 (Del. Ch. 2003).

Mr. Finazzo respectfully objects to several of the government's proposed charges because they are confusing, prejudicial, or misrepresent the law.  Specifically, Mr. Finazzo objects to the following charges: (1) Requests Nos. 4 and 6 (elements of the offense in the mail and wire fraud

charges); (2) Requests Nos. 4 and 6 (first element of mail and wire fraud: definition of scheme to defraud); (3) Requests Nos. 4 and 6 (second element of mail and wire fraud: definition of participation in scheme with intent to defraud); (4)  Requests Nos. 4 and 6 (third element of mail and wire fraud: material misrepresentation); (5) Request No. 7 (second element of the Travel Act violation: intent to engage in unlawful activity); (6) Request No. 8 (second element of making a false statement in an SEC filing: false statement was material); (7) Request No. 9 (aiding and abetting); (8) Request No. 11 (false exculpatory statements); (9) Request No. 15 (all available evidence need not be produced); and (10) Request No. 26 (irrelevance of possible punishment). Moreover, Mr. Finazzo objects to the word "unlawful" and its related forms, which the government uses throughout its requests to charge.

In addition to Mr. Finazzo's specific objections, Mr. Finazzo objects to the word "unlawful" and its related forms, used throughout the government's requests to charge.  Mr. Finazzo also objects generally to all of the government's requests insofar as they differ from his own.  He respectfully requests that the instructions contained in Mr. Finazzo's requests to charge because they more closely track the law, are more clear, complete, and neutral, and are less confusing and less prejudicial.

Mr. Finazzo also respectfully requests permission to amend and/or supplement his requests to charge to include two additional instructions in light of the government's requests to charge and respectfully reserves the right to request additional charges based on the evidence in the case and the continuing evolution of his defense.

## I.   **SPECIFIC OBJECTIONS**

**Use of the Words and/or Phrases of "Criminal,"
"Crime," or "Criminally Unlawful"
in Place of the Word "Unlawful"**

The government's requests to charge repeatedly use a form of the word "unlawful," without definition.  If given, these charges would leave it to the jury to define unlawful, inviting them to treat a civil wrong, such as a breach of fiduciary duty, as unlawful or contrary to law. Without definition and explanation, the jury could find that Mr. Finazzo's alleged nondisclosure regarding his interest in the profits was "unlawful" in a civil sense and thereby relieve the government of its burden of proving beyond a reasonable doubt that Mr. Finazzo had the requisite criminal intent. Therefore, Mr. Finazzo proposes to cure such flaw by replacing "unlawful" with the words "crime," "criminal," or "criminally unlawful" as applicable in the context, and also requests various clarifications throughout the charge that Mr. Finazzo is on trial for criminal conduct and not a breach of fiduciary duty.   Such is consistent with the analysis of the Supreme Court and the Second Circuit in *United States v. McNally*, 483 U.S. 350 (1984), and *United States v. Mittelstaedt*, 31 F.3d 1208 (2d Cir. 1994).

GOVERNMENT'S REQUEST NOS. 4 AND 6
**Mail and Wire Fraud –** *Elements of the Offense*

**A.     Government's Proposed Instructions**

Mail Fraud: Elements of the Offense:

In order to meet its burden of proof on Counts TWO through FIFTEEN, the government must establish beyond a reasonable doubt the following four elements of the crime of mail fraud.

First, that there was a scheme or artifice to defraud or to obtain money or property by false and fraudulent pretenses, representations or promises, as alleged in the Indictment;

Second, that the defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud;

Third, that the misrepresentation made or the information not disclosed was material; and

Fourth, that for the purposes of executing or in furtherance of the scheme, the defendant used or caused the use of the mails or a private or commercial interstate carrier.

I will now explain each of the four elements of mail fraud in more detail.

Wire Fraud: Elements of the Offense:

In order to meet its burden of proof on Count SIXTEEN, the government must establish beyond a reasonable doubt the following four elements of the crime of wire fraud.

First, that there was a scheme or artifice to defraud or to obtain money or property by false and fraudulent pretenses, representations or promises, as alleged in the Indictment;

Second, that the defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud;

Third, that the misrepresentation made or the information not disclosed was material; and

Fourth, that for the purposes of executing or in furtherance of the scheme, the defendant used or caused the use of interstate wires. This would include the

use of a bank wire transfer or an email sent over the Internet that traveled across state lines.

The first three elements for wire fraud are the same as the first three elements for mail fraud that I just explained to you. You must apply those instructions to the first three elements of the wire fraud counts. If you find that the government has established beyond a reasonable doubt those same first three elements with respect to any wire fraud charge, you should consider the fourth element of the wire fraud charge.

## B.   Objection

Mr. Finazzo objects to the phrase "information not disclosed" used in the third element of the government's proffered charge as vague, confusing and diminishing of the government's burdens of establishing beyond a reasonable doubt that Mr. Finazzo: (a) "intentionally" withheld information; and (b) with the specific intent to cause financial injury to Aéropostale. The phrase suggests, incorrectly, that proof of the mere nondisclosure of material information is an alternative to the "misrepresentation" and intent elements. The nondisclosure of information cannot be part of a crime unless the nondisclosure is deliberate, a crucial concept that the phrase ignores.

**GOVERNMENT'S REQUEST NOS. 4 AND 6**
**Mail and Wire Fraud – *First Element: Scheme to Defraud***

**A.    Government's Proposed Instruction**

<u>First Element: Scheme to Defraud</u>

The first element the government must prove beyond a reasonable doubt is the existence of a scheme or artifice to defraud or to obtain money or property by means of false or fraudulent pretenses, representations or promises.

A "scheme or artifice" is merely a plan for the accomplishment of an objective. "Fraud" is a general term which embraces all the various means that an individual can devise and that are used by an individual to gain an advantage over another by false representations, suggestions, or deliberate disregard for the truth.

Thus, a "scheme to defraud" is merely any plan, device or course of action to obtain money or property by means of trick, deceit, deception or by false or fraudulent representations or promises.

A statement, representation, claim or document is false if it is untrue when made and was known when made to be untrue by the person making it or causing it to be made.  A representation or statement is fraudulent if it was falsely made with the intention to deceive.  Deceitful statements of half-truths or the concealment of material facts, and the expression of an opinion not honestly entertained may also constitute false or fraudulent statements under the statute.

The failure to disclose information may also constitute a fraudulent representation if the defendant was under a legal, professional, or contractual duty to make such a disclosure, the defendant actually knew such disclosure ought to be made, and the defendant failed to make such disclosure with the intent to defraud.

The government is not required to establish that the defendant himself originated the scheme to defraud.  Nor is it necessary that the defendant actually realized any gain from the scheme or that the intended victim actually suffered any loss.  Success is not an element of the crime charged.  That is because only a scheme to defraud, and not actual fraud, must be proved to sustain a conviction.

A scheme to defraud need not be shown by direct evidence, but may be established by all of the circumstances and facts in the case.

It is also not necessary that the government prove each and every misrepresentation or false promise alleged in the Indictment.  It is sufficient if the government proves, beyond a reasonable doubt, that one or more of the material misrepresentations was made in furtherance of the scheme to defraud.  You must, however, all agree on at least one misrepresentation that is proved to be false.  That is, you cannot find the defendant guilty if only some of you think that

6

misrepresentation "A" is false, while others think that only misrepresentation "B" is false. There must be at least one specific pretense, representation or promise about a material fact that all of you find to be false in order to find the defendant guilty.

If you find that the government has sustained its burden of proof that a scheme to defraud, as charged, did exist, you next should consider the second element of the offense of mail fraud.

## B.   Objection

Mr. Finazzo objects to the government's scheme-to-defraud charge on four grounds. First, the proposed charge offers no definition of what constitutes "money or property" under the mail and wire fraud statutes. For example, it appears to simply assume that Aéropostale was actually deprived of "money or property"—that is, that the company could have negotiated a better deal for itself had it known of Mr. Finazzo's interest in the transactions with South Bay. It also allows the jury to find that moneys Mr. Finazzo received was money or property, rather than having to show Aéropostale paid higher prices. Moreover, the charge does not adequately explain the contemplation-of-actual-harm requirement of the intent element. To convict a defendant of wire or mail fraud, the jury must find that the misrepresentation or omission was not only material but also intended to cause actual harm of a pecuniary nature. *United States v. Mittelstaedt*, 31 F.3d 1208, 1217 (2d Cir. 1994). *See also United States v. McNally*, 483 U.S. 350, 360-61 (1984) (finding conviction beyond scope of mail-fraud statute where the trial court failed to instruct the jury that it must find that the purported victim "was defrauded of any money or property"); *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987) ("[O]nly a showing of intended harm will satisfy the element of fraudulent intent.").

Here, the government must establish that, in failing to disclose his financial interest in the South Bay transactions, Mr. Finazzo intended to cause financial harm to Aéropostale. In its

current form, however, the proposed charge would permit a jury to convict Mr. Finazzo based on a mere breach of fiduciary duty: Mr. Finazzo's alleged failure to disclose his interest in the profits of South Bay. As repeatedly stressed herein, the Supreme Court and the Second Circuit have explicitly rejected the notion that a civil breach of fiduciary duty, without intending actual pecuniary harm, constitutes a violation of the wire/mail fraud statutes. *McNally*, 483 U.S. at 360-61; *Mittlestaedt*, 31 F.3d at 1218. Mr. Finazzo respectfully submits that Request No. 19 of Mr. Finazzo's Requests to Charge conforms to *McNally* and *Mittlestaedt*.

Second, Mr. Finazzo objects to the phrase "only a scheme to defraud, and not actual fraud, must be proved to sustain a conviction" because it would mislead the jury. In this context, "to defraud" is used to mean "to cause harm." But even if you find harm to have been caused, that is not sufficient unless the harm was intended. Accordingly, the government's suggested phrase should not be used, but if it is, it should be followed by an instruction such as, "Because the law requires *an intention* to cause harm, even if you find the existence of harm, that is not enough to convict unless you also find that Mr. Finazzo intended to cause that harm."

Third, Mr. Finazzo objects to the phrase "expression of opinion not honestly entertained" (Govt.'s Request to Charge No. 4, at 10 ¶ 4) because it broadens the fraud alleged in the Second Superseding Indictment (the "Indictment"). The mail/wire fraud counts of the Indictment are predicated on, among other things, Mr. Finazzo's alleged omission and concealment of material information—but not on the veracity of his opinions. *See* Indictment ¶ 10 (alleging that Mr. Finazzo "concealed from Aéropostale his agreement with the defendant Douglas Dey"; that he "continued to falsely deny and conceal his agreement with Dey and South Bay [after the company went public in May 2002] when . . . asked . . . to identify his Related Party Transactions"; and that he "falsely denied and failed to disclose his interest in the Joint Ventures

with Dey"). The Indictment is silent on any purported opinions by Mr. Finazzo. The government's proposed language would therefore invite the jury to speculate and convict Mr. Finazzo for a type of alleged fraud that is not charged in this case—amounting to a constructive amendment of the Indictment. *See, e.g.*, *Stirone v. United States*, 361 U.S. 212, 216-17 (1960); *United States v. Wozniak*, 126 F.3d 105, 109 (2d Cir. 1997) ("A constructive amendment of an indictment is a per se violation of the Grand Jury Clause of the Fifth Amendment that requires reversal even without a showing of prejudice to the defendant." (internal quotation marks omitted)). Accordingly, the phrase "expression of opinion not honestly entertained" should be stricken from the charge.

Fourth, the government's proposed scheme-to-defraud charge does not identify the alleged statements or omissions at issue, and therefore invites the jury to convict Mr. Finazzo for whatever they each deem the fraud to be. The Court's instructions should clearly define the fraud to involve only the statements and omissions alleged in the Indictment.

GOVERNMENT'S REQUEST NOS. 4 & 6
**Wire and Mail Fraud – *Second Element: Participation in Scheme with Intent to Defraud***

### A.     Government's Proposed Instruction

Second Element: Knowingly, Intentionally and With Intent to Defraud

The second element that the government must establish beyond a reasonable doubt is that the defendant CHRISTOPHER FINAZZO participated in the scheme to defraud knowingly, willfully and with the specific intent to defraud.

To act "knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently.

To act "willfully" means to act knowingly and purposely, with an intent to do something the law forbids; that is to say, with a bad purpose of either disobeying or disregarding the law.

To act with "intent to defraud" means to act knowingly and with the specific intent to deceive, for the purpose of obtaining money or property from another.

How someone acted – his or her state of mind – is a question for you to determine. Direct proof of knowledge and fraudulent intent is not always available, nor is it required. The ultimate facts of knowledge and criminal intent may be established by circumstantial evidence, which I explained to you earlier. Circumstantial evidence, if believed, is of no less value than direct evidence.

Since an essential element of the mail fraud crime charged is intent to defraud, it follows that good faith on the part of a defendant is a complete defense to a charge of mail fraud. A defendant, however, has no burden to establish a defense of good faith. The burden is on the government to prove fraudulent intent and consequent lack of good faith beyond a reasonable doubt. However misleading or deceptive a plan may be, it is not fraudulent of it was devised or carried out in good faith. Evidence which establishes only that a person made a mistake in judgment or was careless does not establish fraudulent intent.

There is another consideration to bear in mind in deciding whether or not the defendant acted in good faith. You are instructed that if the defendant participated in the scheme to defraud, then a belief by the defendant, if such belief existed, that ultimately everything would work out so that no one would lose any money does not require you to find that the defendant acted in good faith. If the defendant participated in the scheme for the purpose of causing some financial or property loss to another, then no amount of honest belief on the part of the defendant that the scheme would, for example, ultimately make a profit, will excuse fraudulent actions or false representations caused by him.

As a practical matter, then, in order to sustain the charges against the defendant, the government must establish beyond a reasonable doubt that the defendant knew that his conduct as a participant in the scheme was calculated to deceive and nonetheless, he participated in the alleged fraudulent scheme.

To conclude with this element, if you find that the defendant was not a knowing participant in the scheme and lacked the specific intent to deceive, you should acquit the defendant. On the other hand, if you find that the government has established beyond a reasonable doubt the first two elements, namely the existence of a scheme to defraud, but also this second element, that the defendant was a knowing participant and acted with intent to defraud, you should consider the third element of the wire fraud charge.

## B.   Objection

Mr. Finazzo objects to the government's proposed instruction on two grounds. First, it fails to instruct the jury that the "ordinary prudence" standard—whether the statements at issue would have deceived a person of ordinary prudence—may be used to gauge Mr. Finazzo's intent to deceive. As the Second Circuit has explained, this standard "is a tool the jury may utilize to gauge the defendant's intent and is helpful in situations in which the defendant's intent to deceive may be unclear. . . . [E]vidence that the statements [at issue] would have deceived a person of ordinary prudence and comprehension is evidence that defendant actually intended to deceive." *United States v. Thomas*, 377 F.3d 232, 243 (2d Cir. 2004). Mr. Finazzo respectfully submits that the ordinary prudence standard should be included in the intent-to-defraud charge.

Second, Mr. Finazzo objects strenuously to the follow portion of the government's requested charge:

You are instructed that if the defendant participated in the scheme to defraud, then a belief by the defendant, if such belief existed, that ultimately everything would work out so that no one would lose any money does not require you to find that the defendant acted in good faith. If the defendant participated in the scheme for the purpose of causing some financial or property loss to another, then no amount of honest belief on the part of the defendant that the scheme would, for example, ultimately make a profit, will excuse fraudulent actions or false representations caused by him.

11

This instruction is not only confusing, but worse, eviscerates the heart of the intent-to-defraud element by instructing the jury that a conscious purpose to cause harm is compatible with a belief that "no one would lose any money."  If a defendant's intention is that *no* money will be lost, then he does not intend to cause harm.  The government's apparent purpose in proposing this instruction is to make the point that an intention to cause higher costs, without offsetting benefits, and therefore <u>reduce</u> profits is sufficient; that is, a defendant need not have intended to eliminate the purported victim's entire profit on the transactions in question.  But this purpose can better be served by instructing the jury directly and clearly, such as the following:

> The government's obligation to prove, beyond a reasonable doubt, Mr. Finazzo's intention to cause harm does not mean that the harm can only be the elimination of Aéropostale's profit.  If you find that the government has proved beyond a reasonable doubt that Mr. Finazzo intended to cause Aéropostale to incur higher costs not associated with offsetting benefits, that is sufficient.  However, you must remember that if the government fails to prove Mr. Finazzo did not intend to cause either losses or lower profits to Aéropostale, then you must find him not guilty.

GOVERNMENT'S REQUEST NOS. 4 & 6
**Wire and Mail Fraud – *Third Element: Material Misrepresentation***

### A.   Government's Proposed Instruction

Third Element: Material Misrepresentation

The third element of the crime of mail fraud is that the false or fraudulent misrepresentation made or the information not disclosed, the omission, was material. A material fact is one which would reasonably be expected to be of concern to a reasonable and prudent person in relying upon the representation or statement in making a decision. This means that if you find a particular statement of fact to have been false, you must determine whether that statement was one that a reasonable person might have considered important in making his or her decision. The same principle applies to fraudulent half-truths or omissions of material facts.

The government need not prove that the defendant personally made the fraudulent statement, representation or promise, or that he omitted the material fact. It is sufficient if the government establishes that the defendant caused the fraudulent statement, representation or promise to be made, or caused the fact to be omitted. With regard to the alleged misrepresentations and omissions, you must determine whether the statement was false when it was made, and, in the case of alleged omissions, whether the omission was misleading.

If you find that the government has established beyond a reasonable doubt the first three elements, you should consider the fourth element of the mail fraud charge.

### B.   Objection

Mr. Finazzo objects to this proposed instruction because it is vague, overbroad, and confusing. As the Second Circuit has noted, "the deceit practiced must be related to the contemplated harm, and that harm must be found to reside in the bargain sought to be struck." *United States v. Schwartz*, 924 F.2d 410, 420 (2d Cir. 1991). The government's proposed instruction provides a sweeping definition of "material fact": "one [that] is reasonably expected to be of concern . . . in making *a* decision" and one that a reasonable person would have considered important "in making *his or her* decision." (Govt.'s Request to Charge No. 4, at 15 ¶

1; No. 6, at 21 ¶ 6) (emphasis added).  If "false representations were collateral to the bargain and did not cause any discrepancy between benefits reasonably anticipated and actual benefits received," those misrepresentations do not violate the mail/wire fraud statutes.  *Schwartz*, 924 F.2d at 420.

The first sentenced proposed by the government, "The third element of the crime of mail fraud is that the false or fraudulent misrepresentation made or the information not disclosed, the omission, was material" is confusing and risks weakening the government's burden of proof.  In particular, the phrase,  "or the information not disclosed, the omission, was material" does not make clear that, in order to satisfy this element, the "information not disclosed" must be information that was intentionally not disclosed.

Mr. Finazzo respectfully submits that Request No. 21 of Mr. Finazzo's Requests to Charge cures the flaw contained in the government's proposed charge.

### GOVERNMENT'S REQUEST NO. 7
### The Travel Act – *Second Element: Intent to Engage in Unlawful Activity*

Mr. Finazzo objects to the government's request number seven insofar as it relates to the New York State crime of commercial bribery, which underlies the charge of conspiracy to violate the Travel Act.

## A.   Government's Proposed Instruction

Second Element: Intent to Engage in Unlawful Activity

The second element that the government must prove beyond a reasonable doubt is that the defendant's use of an interstate facility or interstate travel was done with the intent to promote, manage, establish or carry on an unlawful activity.

It is not enough for the government to prove only that the defendant used an interstate facility or traveled interstate. The government must also prove beyond a reasonable doubt that the defendant did so for the purpose of facilitating an unlawful activity.

The unlawful activities that the government alleges the defendant intended to commit are violations of two provisions of New York Penal Law. In order to prove that the defendant used an interstate facility or traveled in interstate commerce with the intent to facilitate a violation of New York Penal Law, the government must prove beyond a reasonable doubt that the defendant performed or attempted to perform an act in furtherance of commercial bribing (N.Y. Penal Law 180.00) or commercial bribe receiving (N.Y. Penal Law 180.05) with the intent that each element of one or both of these crimes be completed.

## A.   Commercial Bribing

The elements of commercial bribing are as follows:

First, that the defendant did offer, agree, or did in fact confer any benefit upon someone. A "benefit" means any gain or advantage to a third person pursuant to the desire or consent of the beneficiary;

Second, that at the time the benefit was offered, agreed upon, or conferred, the person who was to receive that benefit was then the employee, agent, or fiduciary of another;

Third, that at the time the benefit was offered, agreed upon, or conferred, the person did not have the consent of his employer or principal to receive that benefit; and

<u>Fourth</u>, that this benefit was offered, agreed upon, or conferred upon the beneficiary by the defendant, with intent to influence the conduct of the beneficiary in relation to his employer's or principal's affairs.

B.     <u>Commercial Bribe Receiving</u>

The elements of commercial bribe receiving are as follows:

<u>First</u>, that the defendant did solicit, accept, or agree to accept a benefit from another person;

<u>Second</u>, that at the time the benefit was solicited, accepted, or agreed to be accepted, the defendant was then an employee, agent, or fiduciary;

<u>Third</u>, that at the time the benefit was solicited, accepted, or agreed to be accepted, the person who was to receive the benefit did not have the consent of his employer or principal to do so; and

<u>Fourth</u>, that there was an agreement or understanding that the defendant's conduct in relation to his employer's or principal's affairs would be influenced by that benefit.

**B.   Objection**

Mr. Finazzo objects to this instruction on two grounds.  First, he objects to the inclusion of a "commercial bribing" instruction.  To be guilty of commercial bribing, Mr. Finazzo must have conferred or offered benefit to someone with the intent of influencing the conduct of the beneficiary. There is no allegation in the indictment that Mr. Finazzo committed the crime of commercial bribing.  Instead, the indictment alleges that Mr. Finazzo *received* a benefit.  *See* Indictment ¶ 8.  As the jury instructions relate only to Mr. Finazzo, a commercial-bribing instruction is improper because there are no facts alleged in the indictment that would permit a jury to find that Mr. Finazzo had committed the crime of commercial bribing.

Second, Mr. Finazzo objects to the omission of the New York State statutory definitions for the commercial bribe receiving charge.  The statutory definitions, which were included in Mr. Finazzo's requests to charge, are as follows:

"Benefit" means any gain or advantage to the beneficiary and includes any gain or advantage to a third person pursuant to the desire or consent of the beneficiary.

"Agreement" means a mutual agreement between an employee and a person from whom he or she solicits, accepts or agrees to accept any benefit that such employee's conduct in relation to his or her employer's or principal's affairs will thereby be influenced.

"Understanding" means at least a unilateral perception or belief by an employee who solicits, accepts, or agrees to accept any benefit from another person that such benefit will influence the employee's conduct in relation to his or her employer's or principal's affairs.[1]

The omission of these terms would permit the jury to erroneously conclude that Mr. Finazzo had violated New York State law, when in fact his conduct did not constitute a violation of New York's commercial bribery statute.  As the jury must find that Mr. Finazzo violated the New York statute to find him guilty of conspiracy to violate the Travel Act, these definitions must be included.

---

[1] Adapted from New York Office of Court Administration, *Criminal Jury Instructions 2d*, Penal Law 180.08 (Commercial Bribe Receiving, First Degree), *available at* http://www.nycourts.gov/cji/2-PenalLaw/180/180.08.pdf.

GOVERNMENT'S REQUEST NO. 8
**False Statement in Report Required to Be Filed with the SEC**
*Second Element: False Statement Was Material*

**A.   Government's Proposed Instruction**

The second element that the government must prove beyond a reasonable doubt is that the alleged false statement of fact was "material." The word "material" here refers to the nature of the false or misleading statements. We use the word "material" to distinguish between the kinds of statements we care about and those that are of no real importance. Matters that are "material" may also include fraudulent half-truths or omissions of material fact. That means that if you find a particular statement of fact or omission to have been untruthful or misleading, before you can find that statement or omission to be material, you must also find that the statement or omission was one that would have mattered to a reasonable person in making such an investment decision.

If you find that the defendant made materially false or misleading statements, his conduct will automatically be unlawful.

Nor does it matter whether the alleged unlawful conduct was or would have been successful, or whether the defendant profited or would have profited as a result of the alleged scheme. If, however, you find that the defendant expected to or did profit from the alleged scheme, you may consider that in relation to the element of intent, which I will discuss in a moment.

Any false statement of fact must have been material on the date the SEC report was filed. Again, Aéropostale's proxy statement on Schedule 14A was filed with the SEC on or about May 15, 2006.

**B.   Objection**

Mr. Finazzo objects to the government's requested definition of the term "material" because it is contrary to well-settled law on the definition of a material statement under section 14(a). In *TSC Industries, Inc. v. Northway*, 426 U.S. 438 (1976), the Supreme Court stated that for purposes of section 14(a) "an omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding *how to vote*." *Id.* at 449 (emphasis added); *accord Resnik v. Swartz*, 303 F.3d 147, 151 (2d Cir. 2002); *Sandberg v. Virginia Bankshares*, 891 F.2d 1112, 1121 (4th Cir. 1989). In adopting its materiality standard

in *TSC Industries*, the Supreme Court was mindful that an overly expansive definition risked "bury[ing] the shareholders in an avalanche of trivial information." *TSC Industries*, 426 U.S. at 448; *accord Basic Inc. v. Levinson*, 485 U.S. 224, 233 (1988).

Notably, the government's requested charge states that a statement is material if it would have mattered to a person in making an *investment* decision. This definition is taken from the materiality standard for section 10(b) claims. However, the government has not alleged a purported section 10(b) violation. The government has alleged only that Mr. Finazzo caused Aéropostale to file a false proxy statement (Schedule 14A), which is a section 14(a) violation. Accordingly, the correct standard is that "a fact is material . . . if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to *vote*." *Koppel v. 4987 Corp.*, 167 F.3d 125, 131 (2d Cir. 1999) (emphasis added) (internal quotation marks and citations omitted).

The instruction included in Mr. Finazzo's initial requests to charge is an accurate reflection of the law and should be given to the jury in its entirety.

### GOVERNMENT'S REQUEST NO. 9
#### *Aiding and Abetting*

**A.    Government's Proposed Instruction**

In connection with Counts TWO through SEVENTEEN, namely, the mail fraud, the wire fraud and making a false statement in a report required to be filed with the SEC charges, the defendant CHRISTOPHER FINAZZO can also be found guilty if the government proves, beyond a reasonable doubt, that the defendant "aided and abetted" another in committing the offenses.

The aiding and abetting statute, Section 2 of Title 18 of the United States Code, provides:

> (a) whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal;

> (b) whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Under this statute, it is not necessary for the government to show that the defendant himself committed the crime with which he is charged in order for you to find that defendant guilty.  This is because a person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself.

Accordingly, you may find a defendant guilty of the mail fraud charged in Counts TWO through FIFTEEN, the wire fraud charged in Count SIXTEEN and making a false statement in a report required to be filed with the SEC charged in COUNT SEVENTEEN if you find beyond a reasonable doubt that the government has proved that another person actually committed the offense with which the defendant is charged, and that the defendant aided or abetted that person in the commission of the offense.

First, the government must prove that another person has actually committed the crime charged.  No one can be convicted of aiding and abetting criminal acts of another if no crime was committed by the other person.

If you do find that a crime was committed, then consider whether the defendant aided or abetted the commission of the crime.  To aid or abet, it is necessary that the defendant knowingly associated himself in some way with the crime and that he participated in the crime by doing some act to help make the crime succeed, intending to participate and make it succeed.

The mere presence of the defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or the mere acquiescence by a defendant in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding and abetting.  An aider and abettor must have some interest in the criminal venture.

20

To determine whether the defendant aided or abetted the commission of the crime with which he is charged, ask yourself these questions:

Did he participate in the crime charged as something he wished to bring about?

Did he knowingly associate himself with the criminal venture?

Did he seek by his actions to make the criminal venture succeed?

If your answer is yes, then the defendant is an aider and abettor. If your answer is no, then the defendant is not an aider and abettor.

Govt.'s Request to Charge No. 9, at 38-40.

### B. Objection

Mr. Finazzo objects to the inclusion of the government's proposed aiding-and-abetting charge. The Second Circuit has stated that it is "preferable that the indictment charge" aiding and abetting if the government intends to proceed on such a theory, although it is not strictly required. *See United States v. Taylor*, 464 F.2d 240, 241 n.1 (2d Cir. 1970). In the instant case, however, an aiding-and-abetting instruction is improper it is completely inconsistent with the government's theory and the facts as alleged in the Indictment. In *United States v. Marrero*, No. 92 Cr. 35 (TPG), 1994 WL 23224 (S.D.N.Y. Jan. 26, 1994), Judge Griesa refused to give an aiding-and-abetting instruction because it was inconsistent with the government's theory, and a conviction of aiding and abetting would mean that the jury disbelieved the government's witnesses. *Marrero*, 1994 WL 23224, at *2. In *Marrero*, the defendant was charged with armed robbery of a postal truck and using a firearm in connection with the robbery. *Id.* at *1. After the court gave the jury instructions, the government requested clarification on whether the court had suggested that the defendant could be found guilty on an aiding-and-abetting theory. *Id.* at *2. The court replied that the government had "pitched [its] case solely on [the defendant] using the gun, and I want to clarify that." *Id.* The court went on to explain that it had not charged aiding and abetting because the government's case was

pitched and [its] witnesses came in – at least the witnesses who would be expected to know came in and said he was the man with the gun.
Now, I think you have to kind of stand or fall on one thing or the other. And if those witnesses are not believable, I don't think the fellow should get convicted. And I don't think we should present an alternative theory to the jury to have them convict even if they don't believe the government's witnesses, so I am not going to give an aiding and abetting charge.

*Id.*

Here, under the facts alleged in the Indictment, there is no theory under which Mr. Finazzo could be convicted of aiding and abetting unless the government necessarily proves him guilty of the substantive offenses. To convict a defendant of aiding and abetting, the government must prove four things: "(1) commission of the underlying crime, (2) by a person other than the defendant, (3) a voluntary act or omission by the person charged as an aider or abettor, with (4) the specific intent that his act or omission bring about the underlying crime." *United States v. Wiley*, 846 F.2d 150, 154 (2d Cir. 1988) (quoting *United States v. Zambrano*, 776 F.2d 1091, 1097 (2d Cir. 1985)). The defendant must "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." *United States v. DeFiore*, 720 F.2d 757, 764 (2d Cir. 1983) (citation and internal quotation marks omitted). To convict Mr. Finazzo of aiding and abetting, the jury would have to find that he acted "with the specific purpose of bringing about the underlying crime." *United States v. Samaria*, 239 F.3d 228, 235 (2d Cir. 2001) (quoting *United States v. Best*, 219 F.3d 192, 199 (2d Cir. 2000)) (additional citations omitted), *overruled on other grounds by United States v. Huezo*, 546 F.3d 174 (2d Cir. 2008).

On the mail and wire fraud charges (Counts Two through Fifteen and Sixteen, respectively), the government's theory is that Mr. Finazzo entered into a corrupt agreement with Douglas Dey. *See* Indictment ¶ 8. According to the government, Mr. Dey paid Mr. Finazzo

money to have Aéropostale purchase merchandise from Mr. Dey's company, South Bay.  *See* Indictment ¶¶ 8, 9.  There is no allegation that any other employees at Aéropostale were aware of the scheme or participated in it.  The theory, as presented by the government, consisted of a corrupt agreement by Mr. Dey and Mr. Finazzo to harm Aéropostale.  *See* Indictment ¶ 9.  Under no theory presented by the government could Mr. Finazzo have associated himself with the venture—with the specific purpose of committing wire and mail fraud—and not have *actually* committed wire and mail fraud.   Put another way, there is simply no reasonable view of the evidence under which Mr. Finazzo could be *not guilty* of intending to cause pecuniary harm to Aéropostale on the government's theory of the mail and wire fraud charges (i.e., that he intended to send Aéropostale's orders to South Bay on terms that harmed Aéropostale whilst intentionally concealing from Aéropostale his interest in South Bay's profits), and yet simultaneously be guilty of mail or wire fraud on an aiding-and-abetting theory.  Therefore, an aiding-and-abetting instruction on these counts is improper.

An aiding-and-abetting charge is also inappropriate on Count Seventeen (false statement in a report required to be filed with the SEC).  The government's theory on this charge is that Mr. Finazzo personally misstated his compensation for three years.  *See* Indictment ¶ 22.  Under this theory, Mr. Finazzo could be guilty only as a principal.  Accordingly, an aiding-and-abetting instruction on Count Seventeen is improper.

Because an aiding-and-abetting instruction is improper on all substantive counts, Mr. Finazzo respectfully requests that the Court exercise its discretion and decline to give such a charge.

7166281.10

### GOVERNMENT'S REQUEST NO. 11
*False Exculpatory Statements*

**A.   Government's Proposed Instruction**

The government claims that in certain statements, the defendant sought falsely to exonerate or exculpate himself from criminal responsibility.

If you find that the defendant gave a false statement in order to divert suspicion from himself, you may – but are not required to – infer that the defendant believed that he was guilty.  You may not, however, rely on this evidence alone to support a finding of guilt.  Whether a defendant's statement does or does not show that he believed himself to be guilty and the significance, if any, to be attached to any such evidence, are matters for you, the jury, to decide.

Govt.'s Request to Charge No. 11, at 51.

**B.   Objection**

Mr. Finazzo objects to this request generally because it risks weakening the presumption of innocence and shifting the burden of proof to Mr. Finazzo to explain his allegedly false statements.  Accordingly, Mr. Finazzo respectfully requests that the Court decline to give an instruction on false exculpatory statements.

Should the Court include an instruction on false exculpatory statements, Mr. Finazzo objects to the government's requested charge because it risks improperly prejudicing Mr. Finazzo.  At this juncture, it is unknown whether Mr. Finazzo will testify on his own behalf.  Were Mr. Finazzo to testify, the government's proposed instruction would invite the jury to disbelieve his testimony.  It is for this reason that the Sand treatise emphasizes the importance of including the limiting instruction that the allegedly false exculpatory statements were made "outside the courtroom."  *See* 1 Leonard B. Sand et al., *Modern Federal Jury Instructions*, Instruction No. 6-11 (Matthew Bender 2012).

Additionally, the government's proposed charge does not specify that the false exculpatory statement can be used only to show a consciousness of guilt, rather than actual guilt. *See United States v. Johnson*, 513 F.2d 819, 824 (2d Cir. 1975). Such emphasis is particularly important in the instant case because there would have been reason for Mr. Finazzo to think he might have done something wrong without Mr. Finazzo necessarily believing that he had engaged in unlawful behavior.

If the Court decides to give an instruction on false exculpatory statements, Mr. Finazzo requests that, in lieu of the government's requested instruction, the Court give the following instruction:

> You heard testimony that Mr. Finazzo made certain statements outside the courtroom at his so called "exit interview" at Aeropostale. The government claims that some of the statements Mr. Finazzo made during that interview were false.
>
> If you find both that Mr. Finazzo gave any false statement at the exit interview and that he did so in order to divert suspicion from himself, you may, but are not required, to infer that these statements show a consciousness of wrongdoing of some kind. You may not, however, infer on the basis of this alone, that Mr. Finazzo is, in fact, guilty of the crime for which he is charged.
>
> Whether or not the evidence as to Mr. Finazzo's statements are evidence of a consciousness of wrongdoing, and the significance, if any, to be attached to any such evidence, are matters for you, the jury, to decide.

Adapted from 1 Leonard B. Sand et al., *Modern Federal Jury Instructions*, Instruction No. 6-11 (Matthew Bender 2012). *See United States v. Johnson*, 513 F.2d 819, 824 (2d Cir. 1975).

## GOVERNMENT'S REQUEST NO. 15
### *All Available Evidence Need Not Be Produced*

### A.   Government's Proposed Instruction

Although the government bears the burden of proof, the law does not require the government to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matter in issue at this trial. Nor does the law require the government to produce as exhibits all papers and things mentioned during the course of the trial.

Govt.'s Request to Charge No. 15, at 55.

### B.   Objection

Mr. Finazzo objects to this request because it risks prejudicing the defense by lessening the government's burden of proof. The Sand treatise states that this charge is "discretionary," but "should be given with great caution." 1 Leonard B. Sand et al., *Modern Federal Jury Instructions*, Comment to Instruction No. 4-4 (Matthew Bender 2012). The government presumably seeks this instruction because it does not plan to call Mr. Finazzo's alleged co-conspirator, Mr. Dey. Although such an instruction might be proper to discourage the jury from speculating when the government fails to call relatively minor witnesses whose testimony might be cumulative, it is far different when the government has failed to call the main witnesses to the event in question. This instruction is also improper and redundant in light of the government's Request No. 17, titled "Uncalled Witness Equally Available." Accordingly, Mr. Finazzo requests that this instruction not be given.

## GOVERNMENT'S REQUEST NO. 16
### *Irrelevance of Possible Punishment*

### A.   Government's Proposed Instruction

The question of possible punishment of the defendant, should that become necessary, is of no concern to the jury and it should not, in any sense, enter into or influence your deliberations.  The duty of imposing a sentence, should that become necessary, rests exclusively with me, the Court.  Your function is to weigh the evidence in the case, and to determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of the evidence.  Under your oath as jurors, you cannot allow a consideration of the punishment that may be imposed upon a defendant, if he is convicted, to influence your verdict, in any way, or, in any sense, to enter into your deliberations.

Govt.'s Request to Charge No. 16, at 56.

### B.   Objection

Mr. Finazzo objects to the inclusion of such an instruction because it has the effect of weakening the presumption of innocence by suggesting to a jury that punishment is coming. Punishment, as the jury well understands, only occurs if a defendant is guilty.  While the defendant has a strong interest in the jury not being told things that weaken the presumption of innocence, the government has no correspondingly strong interest in the giving of such a charge. Particularly in a case like this one—a case not involving violence and in which the underlying fraud is the causing of a relationship between a company and its vendor on terms that appeared to many to be, at least in some respects, beneficial to a company—the idea that a jury would acquit the defendant whose guilt had nevertheless been proven beyond a reasonable doubt because it feared the amount of punishment he would get, is extremely speculative and unlikely. Moreover, the Court will give a charge that the jury must convict Mr. Finazzo if the government proves the elements.  Such an instruction is more than adequate, and an instruction telling the

jury to disregard the possible punishment should not be given to avoid weakening the presumption of innocence.

Moreover, we note that the authority of a court to sometimes give a charge with regard to punishment derives from a United States Supreme Court case, *Rogers v. United States*, 422 U.S. 35 (1975), in which the Court held that the charge should have been given to prevent prejudice *to the defendant*. *Rogers*, 422 U.S. at 40. The potential for that prejudice arose because the jury had specifically asked if it could make a "mercy" recommendation to go along with its verdict. *Id.* at 36-37. It was in this factual context—one in which the topic of punishment had already been the subject of communications that had gone back and forth between the judge and the jury—that the Court concluded that the instruction had to be given to protect the defendant. *Id.* at 40. Here, by contrast, Mr. Finazzo is not, at this point, requesting any such instruction, nor at this point is there any reason to believe that the jury will disregard the Court's other instructions based on silent speculation about the nature of potential punishment.

## II.   <u>SUPPLEMENTAL REQUESTS</u>

In addition to the requests to charge Mr. Finazzo submitted on March 1, 2013, Mr. Finazzo respectfully requests that the Court give two additional instructions on (1) the number of witnesses and uncontroverted testimony; and (2) the necessity of finding Mr. Finazzo's conduct to be criminally illegal, rather than unlawful.


### MR. FINAZZO'S REQUEST NO. 45
### Number of Witnesses and Uncontroverted Testimony

The fact that one party may have called more witnesses or introduced more evidence than the other does not mean that you should necessarily find the facts in favor of the side offering more witnesses or evidence.  By the same token, you do not have to accept the testimony of any witness who has not been contradicted or impeached, if you find the witness not to be credible. You have to decide which witnesses to believe and which facts are true by looking at all the evidence and drawing upon  your own common sense and personal experience.

After examining all the evidence, you may decide that the party that called more witnesses or introduced more evidence has not persuaded you because you do not believe its witnesses, or because you do believe the fewer witnesses called by the other side.

*Authority*: Adapted from 1 Leonard B. Sand et al., *Modern Federal Jury Instructions*,
     Instruction No. 4-3 (Matthew Bender 2012).

7166281.10

## MR. FINAZZO'S REQUEST NO. 46
### Must Find Conduct to Be Criminally Illegal

As many of you are no doubt aware, there are many actions that could give rise to civil liability and hence be deemed "unlawful" without necessarily being unlawful in the sense of being "criminal" or "criminally illegal." As an example, suppose you were injured because there was a piece of metal in your French fries at a restaurant. The restaurant's actions might have been unlawful, and they might have to pay you money, but that does not necessarily mean the restaurant committed a crime. This is because there is a difference between behavior that is merely "unlawful," and behavior that is "criminal" or "criminally illegal." Mr. Finazzo stands accused of a crime. Therefore, to find him guilty, you must find that the government has proven beyond a reasonable doubt that his actions were "criminally illegal."

*Authority*:

The Second Circuit has "repeatedly recognized a criminal defendant's right to a charge which reflects the defense theory." *United States v. Durham*, 825 F.2d 716, 718 (2d Cir. 1987); *accord United States v. Chen*, 2013 WL 399226, at *6 (S.D.N.Y. Feb. 1, 2013). "It is well established that '[a] criminal defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible that evidence may be.'" *United States v. Pedroza*, 750 F.2d 187, 205 (2d Cir. 1984) (quoting *United States v. O'Connor*, 237 F.2d 466, 474 n.8 (2d Cir. 1956)) (alteration in original). Here, it is possible that a jury could believe Mr. Finazzo violated his fiduciary duty to Aéropostale, and thus could be civilly liable, without necessarily finding that Mr. Finazzo violated any criminal laws. Accordingly, Mr. Finazzo is entitled to have a jury instruction clarifying the distinction between behavior that is merely unlawful and behavior that is criminally illegal.

30

## III.    <u>CONCLUSION</u>

Mr. Finazzo respectfully requests that the Court decline to give the government's requested charges as objected to in this memorandum of law and that the Court give Mr. Finazzo's additional instructions.  He also requests leave to amend or supplement the proposed charges as the need arises.

Dated: New York, NY
       March 11, 2013

CARTER LEDYARD & MILBURN LLP


By: *Robert JA Zito*
    Robert J.A. Zito
    2 Wall Street
    New York, NY 10005
    Tel.: (212) 732-3200

*Attorneys for Defendant Christopher Finazzo*
