Robert J.A. Zito (RZ-6990)
Alan S. Lewis (AL-2828)
CARTER LEDYARD & MILBURN LLP
Two Wall Street
New York, NY 10005
Tel.: (212) 732-3200

*Attorneys for Defendant Christopher Finazzo*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
UNITED STATES OF AMERICA,                                  :   Cr. No. 10-457 (RRM)
                                                           :
                -against-                                  :
                                                           :
CHRISTOPHER FINAZZO,                                       :
                                                           :
                                Defendant.                 :
-----------------------------------------------------------X

# MEMORANDUM ON BEHALF OF CHRISTOPHER FINAZZO
## WITH RESPECT TO RESTITUTION

CARTER LEDYARD & MILBURN LLP
COUNSELORS AT LAW
2 WALL STREET
NEW YORK, N.Y. 10005
———
(212) 732-3200

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES .................................................................................................. ii

I. AÉROPOSTALE SUFFERED NO ECONOMIC LOSS ....................................................... 1

II. THE SPECIAL VERDICT DEMONSTRATES THAT THE GOVERNMENT
 DID NOT PROVE THAT AÉROPOSTALE SUFFERED A LOSS ................................... 5

III. AÉROPOSTALE IS NOT ENTITLED TO ATTORNEY'S FEES ..................................... 7

IV. ANY RESTITUTION AWARD MUST BE REDUCED BY THE AMOUNT
 ALREADY RECOVERED BY AÉROPOSTALE ................................................................ 8

CONCLUSION ........................................................................................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*United States v. Amato,*
   540 F.3d 153 (2d Cir. 2008)..................................................................................7

*United States v. Battista,*
   575 F.3d 226 (2d Cir. 2009)..................................................................................2

*United States v. Ebrahim,*
   2013 U.S. Dist. LEXIS 72072 (S.D.N.Y. May 21, 2013).....................................3

*United States v. Germosen,*
   139 F.3d 120 (2d Cir. 1998)..................................................................................2

*United States v. Gupta,*
   925 F. Supp. 2d 581 (S.D.N.Y. 2013) ..................................................................7

*United States v. Gushlak,*
   728 F.3d 184 (2d Cir. 2013)..........................................................................2, 4, 5

*United States v. Handakas,*
   286 F.3d 92 (2d Cir. 2002)....................................................................................6

*United States v. Rybicki,*
   354 F.3d 124 (2d Cir. 2003)..................................................................................6

*United States v. Skowron,*
   839 F. Supp.2d 740 (S.D.N.Y. 2012)....................................................................3

*United States v. Zangari,*
   677 F.3d 86 (2d Cir. 2012)..........................................................................*passim*

**STATUTES**

18 U.S.C. § 3663A(c)(1)(B) ...........................................................................................1

18 U.S.C. § 3664(j)(2) ....................................................................................................8

U.S.S.G § 2B1.1..........................................................................................................1, 2

Christopher Finazzo, by his undersigned counsel, respectfully submits this memorandum to argue that Aéropostale did not suffer a pecuniary loss, compensable as restitution. The government's request for a restitution award in the same amount as Mr. Finazzo's gain runs directly into the Second Circuit contrary holding in *United States v. Zangari*, 677 F.3d 86 (2d Cir. 2012). "[A] sentencing court ordering restitution under the MVRA may *not* substitute a defendant's ill gotten-gains for the victim's actual loss." *Id.* at 93. The government has the burden to prove that Aéropostale suffered an actual pecuniary injury as a result of Mr. Finazzo's acts, but has failed to sustain it. The jury's specific finding that Mr. Finazzo did not intend to deprive Aéropostale of tangible money or property highlights the government's failure to prove actual harm. Aéropostale itself has not submitted the evidence necessary to support an award of attorney's fees as a form of restitution. Accordingly, restitution may not be ordered in this case.

## I.

## AÉROPOSTALE SUFFERED NO ECONOMIC LOSS

"The Government bears the burden of proving a victim's *actual loss* by a preponderance of the evidence." *United States v. Zangari*, 677 F.3d at 92 (emphasis added). A loss compensable as restitution must be "pecuniary." 18 U.S.C. § 3663A(c)(1)(B). *See also* U.S.S.G § 2B1.1, Application Note 3(A)(i) and (iii) (defining "pecuniary" as "monetary" or "readily measurable in money"). To date, the government has not provided the Court with any evidence that Aéropostale suffered a loss that is pecuniary, monetary or readily measurable in money. The government's reliance on the amount of money Mr. Finazzo received is an insufficient basis for restitution, in light of the Second Circuit's holding in *Zangari* that

1

payments in a commercial bribery case are not a substitute for proof of *actual* loss by the victim. *Id.* at 91.

"The goal of restitution, in the criminal context, is to restore a victim, to the extent money can do so, to the position he occupied before sustaining injury." *United States v. Battista*, 575 F.3d 226, 229 (2d Cir. 2009) (internal quotation marks omitted). "Because the purpose of restitution is essentially compensatory, and because the MVRA itself limits restitution to the full amount of each victim's loss, a restitution order must be tied to the victim's actual, provable, loss." *Zangari*, 677 F.3d at 91 (internal quotation marks and citation omitted); *accord United States v. Gushlak*, 728 F.3d 184, 194 (2d Cir. 2013) ("restitution may be awarded only in *the amount* of losses directly and proximately caused by the defendant's conduct") (emphasis in original); *United States v. Germosen*, 139 F.3d 120, 130 (2d Cir. 1998) (need "showing of actual loss for purposes of restitution").

In *United States v. Zangari*, the Second Circuit held that "a sentencing court ordering restitution under the MVRA may not substitute a defendant's gain as a proxy for a victim's actual loss." 677 F.3d at 93. As the government itself acknowledged when responding to Douglas Dey's sentencing memorandum "[i]t follows from the Second Circuit's holding in *Zangari* that restitution would have been appropriate under the MVRA for a commercial bribery case, *so long as the sentencing court had not conflated gain with restitution.*" Gov't Response to Dey Mem. at 18 (Dkt # 323) (emphasis added).[1] Yet that is exactly what the government seeks to do here.

---

[1] The government attempted to minimize the effect of the holding in *Zangari* by noting that the Second Circuit affirmed "the restitution order under plain error review." Gov't Opposition to Dey Mem. at 17. This distinction is irrelevant as the Second Circuit stated clearly that a court may not substitute a defendant's gain for the victim's loss, and only affirmed the restitution order because "the defendant failed to object to the restitution calculation before the District Court." *Zangari*, 677 F.3d at 87. Here both Mr. Finazzo and Douglas Dey have objected to the government's attempt to use Mr. Finazzo's gain in lieu of proving a loss to Aéropostale.

2

Ignoring the controlling holding of *Zangari*, the Probation Department states in paragraph 21 of the PSR that "according to the Government and Aéropostale, the total bribe amount, $25,790,822.94, is a reasonable estimate of the loss suffered by Aéropostale, and is an appropriate measure by which to calculate restitution." In its response to Mr. Finazzo's objections to the PSR, the government states "[t]here is legal precedent to support the conclusion that the amount of a commercial bribe is a loss to the company that employs the recipient. Indeed, bribes or kickbacks can equate to loss to the victim." Gov't Response at 8. However, the government fails to cite a single case that supports its position, leaving the Court and Mr. Finazzo to speculate as to the identity of this mysterious legal precedent. It is hard to imagine what legal precedent the government could be secretly relying on given the Second Circuit's unambiguous holding in *Zangari*, a commercial bribery case, where the Court rejected the argument that the amount received by the defendant in the form of kickbacks could be used as a substitute for the victim's loss. 677 F.3d at 93.

The few cases cited by the government are entirely inapposite. Neither *United States v. Ebrahim*, 2013 U.S. Dist. LEXIS 72072 (S.D.N.Y. May 21, 2013), nor *United States v. Skowron*, 839 F. Supp.2d 740, 744-46 (S.D.N.Y. 2012), supports the government's argument that Aéropostale is a victim under the MVRA. Gov't Response at 9. Neither case discusses when a court may use a defendant's gain to determine the restitution amount. In both *Ebrahim* and *Skowron* the court awarded restitution for the employer's legal fees as well as a portion of the employee's salary, but in neither case did the court do what the government advocates here – use the defendant's gains as a proxy for the victim's loss. Moreover, the thrust of Mr. Finazzo's argument is not that Aéropostale is not a "victim" in any sense of that word, but rather that the

3

government has failed to prove that Aéropostale suffered any *actual loss*. Aéropostale has not suffered a tangible economic loss – the threshold requirement for restitution.

Second Circuit case law is clear that a defendant's gain may not be substituted for the victim's loss to determine restitution, and a defendant's gain may only be used if it is "a measure of – as opposed to a *substitute* for – the victim's loss." *Zangari*, 677 F.3d at 93. Such instances arise only where "a direct correlation exists between the victims' losses and the defendant's gain." *Zangari*, 677 F.3d at 94. The government claims that "numerous witnesses" testified as to the direct correlation between the money Mr. Finazzo received and alleged harm to Aéropostale.[2] Gov't Response at 7. Notably, the government fails to identify any part of the trial transcript where this purported direct correlation was proved. Indeed, the trial witnesses merely speculated that money Mr. Finazzo received might hypothetically have gone to Aéropostale, and such speculation is insufficient to support an award for restitution. *Gushlak*, 728 F.3d at 195 (courts may only award restitution in amount of the victim's "actual loss" and not approve restitution awards which "incorporate hypothetical or speculative losses"). Restitution may only be awarded for a "reasonable approximation of losses supported by a *sound methodology*." *Gushlak*, 728 F.3d at 196 (emphasis added). A few witnesses speculating as to whether money that went to Mr. Finazzo could have gone to Aéropostale does not constitute a "sound methodology."

---

[2] Not only is there no evidence of a "direct correlation" between Mr. Finazzo's gain and harm to Aéropostale, but the testimony of several government witnesses showed the lack of such correlation. Mr. Slezak testified that related party transactions, such as Aéropostale's relationship with South Bay, could be "beneficial to the company." Tr. 372. Mr. Geiger, at the termination interview, said to Mr. Finazzo, "if you had listed them and explained them, people might have said maybe this makes sense." GX-20A at 23. Mr. Cunningham agreed that companies "often engage in related party transactions" and that a related party transaction does not make a transaction "flawed." Tr. 142-43. Indeed, Aéropostale's CEO and CFO admitted that the opinions they expressed at trial about this subject were *not* based on evidence. Specifically, Mr. Cunningham said that Aéropostale had "*no way of knowing* if [the prices paid to South Bay were] the best possible price[s] we could get for the T-shirts overall." Tr. 137 (emphasis added). Moreover, Geiger twice acknowledged that the harm he claimed was in his "mind." Tr. 1078, 1079. In light of all of this testimony, the government's claim of a "direct correlation" between gain and loss here is specious.

4

The only evidence the government cites in support of its contention that it has proven loss to Aéropostale is the testimony of Jinah Jung. *See* Gov't Response at 7-8. Ms. Jung's testimony is cited only in support of the government's specific claim that Aéropostale paid $300,000 more for an order of fleece from South Bay than it could have paid from a lower cost provider of unknown identity. Gov't Response at 7. Moreover, Ms. Jung's testimony was hypothetical and speculative. She could not name the lower cost provider and Aéropostale's corporate policy was to invest in its vendors and *not* to place every order at the lowest possible cost. Further still, as discussed more fully below, the jury's special verdict shows that it rejected the government's evidence concerning financial harm to Aéropostale.

In the absence of evidence proving by a preponderance of the evidence the actual amount of loss suffered by Aéropostale, restitution may not be awarded. *See Gushlak*, 728 F.3d at 194. The government may not rely on any money gained by Mr. Finazzo to relieve it of its obligation to prove Aéropostale's loss. *Zangari*, 677 F.3d at 93.

## II.

### THE SPECIAL VERDICT DEMONSTRATES THAT THE GOVERNMENT DID NOT PROVE THAT AÉROPOSTALE SUFFERED A LOSS

In arguing for restitution, the government ignores its failure to prove that Aéropostale incurred a financial loss as a result of Mr. Finazzo's actions. By special verdict, Mr. Finazzo was acquitted of mail and wire fraud with the intent to deprive Aéropostale of tangible money or property, and instead was convicted solely on a theory that he deprived Aéropostale of its intangible right to "control the use of its assets." The government argues that Mr. Finazzo's conviction of mail and wire fraud is all that matters for restitution and that the specific, special verdict should be ignored. But even if it is not dispositive, the jury's verdict is certainly relevant, and entirely unhelpful to the government's position. The special verdict was a

5

complete rejection of the government's argument that Mr. Finazzo intended to cause Aéropostale to suffer an actual pecuniary loss.

The prosecution argued to the jury repeatedly and vigorously that Mr. Finazzo deprived Aéropostale of money or property. The jury verdict certainly shows that it did not agree. The Second Circuit has not hesitated to draw rational inferences about jury findings rendered in special verdicts, as it did in *United States v. Handakas*, 286 F.3d 92 (2d Cir. 2002), *overruled on other grounds by United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003). In that case, the government charged Handakas with mail and wire fraud based upon a deprivation of honest services and/or a deprivation of money or property. The jury reached a special verdict convicting Handakas of mail and wire fraud based on deprivation of honest services but "absolved" him of liability under the alternative theory that he had deprived the victim (the "SCA") of its money or property. *Id.* at 95. In assessing the evidence that had been presented during the course of the trial, the Second Circuit stated:

> [T]here was evidence that Handakas left certain workers' names off the payroll and fraudulently substituted other names, that he manipulated the record of the number of hours worked, and that the SCA paid Handakas based upon his false submission. It is, however, doubtful that the government is entitled to the benefit of findings and inferences based on this evidence, which bears upon possible *financial* harm to the SCA. Although the government argued to the jury that the SCA suffered financial loss, i.e. that the SCA was deprived of money or property as well as "honest services," the jury found by special verdict that Handakas was guilty of mail fraud *only* on the ground that he deprived the SCA of its "intangible right of honest services" – and *not* on the ground that the SCA was deprived of money or property.

286 F.3d at 96 (emphasis in original). Similarly, although the government vigorously argued that Aéropostale suffered a financial loss because of Mr. Finazzo's actions, the jury rejected the government's argument, finding only that Mr. Finazzo intended to deprive Aéropostale of its non-pecuniary right of control that cannot be measured in terms of money. Thus, the

6

government is not entitled to the "benefit of findings and inferences" of purported tangible, financial harm.

In its response to Douglas Dey's restitution memorandum the government argues that the forfeiture verdict supports a restitution award. *See* Gov't Response to Dey Mem. at 17. This overlooks the crucial distinction between forfeiture and restitution. Forfeiture prevents the defendant from *profiting* from his crime while restitution compensates the victim for any pecuniary *loss* as the result of a crime. These two concepts are distinct, and as discussed more fully above, the court may not substitute a defendant's gain for the victim's loss for the purposes of determining restitution. *Zangari*, 677 F.3d at 93. Accordingly, as the government failed to prove financial harm to Aéropostale, restitution may not be awarded.

### III.

### AÉROPOSTALE IS NOT ENTITLED TO ATTORNEY'S FEES

In the PSR, the Probation Department stated that Aéropostale sought to recover $1,145,384.30 for its legal fees. Legal fees are recoverable only when the Court concludes that the expenses were "necessary," were "incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense" and where the fees do "not require unduly complicated determinations of fact." *United States v. Amato*, 540 F.3d 153, 159-60 (2d Cir. 2008). Aéropostale has provided no documentation that would enable the Court to assess whether the fees incurred were necessary, whether they were reasonable and whether they were incurred in connection with "proceedings regarding the offense." In cases where legal fees have been included in a restitution award, the billing records have generally been provided to the Court, to enable it to assess these issues. *See United States v. Gupta*, 925 F. Supp. 2d 581 (S.D.N.Y. 2013) (the victim submitted "542 pages of billing records from its

7

counsel" and those records "specify the work performed with sufficient particularity to assess what was done, how it was done and why it was done."). No such records have been submitted here, leaving the Court without a basis to include legal fees in any restitution award.

The government implicitly concedes that Aéropostale has failed to provide sufficient documentation of its legal fees when, in response to Mr. Finazzo's objections to the PSR, it stated that "other than noting that legal fees incurred by the victim can be considered by the Court in fashioning a restitution order, the government takes no position as to whether Aéropostale is entitled to restitution of attorney's fees." Gov't Response at 10.

As Aéropostale has failed to provide the Court with the documentation necessary for the Court to conclude that any legal fees incurred were necessary, reasonable, and in connection with the proceedings regarding the offence, it is not entitled to restitution for its legal fees.

## IV.

### ANY RESTITUTION AWARD MUST BE REDUCED BY THE AMOUNT ALREADY RECOVERED BY AÉROPOSTALE

If the Court were to order restitution, Mr. Finazzo is entitled to a credit for prior payments to Aéropostale. *See* 18 U.S.C. § 3664(j)(2) ("Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim....")

Mr. Finazzo has already paid Aéropostale $5 million in connection with a civil settlement between the parties. Mr. Finazzo and Aéropostale were parties to a civil arbitration regarding Aéropostale's breach of fiduciary duty claims. The arbitration was settled under the agreement that Mr. Finazzo pay Aéropostale $5 million, which he did, in exchange for a general release. *See* Settlement Agreement (Ex. A); Proof of Payment (Ex. B). In addition to the

8

amounts already paid by Mr. Finazzo to Aéropostale, Douglas Dey paid Aéropostale $8 million in December 2006 pursuant to an agreement entered into between Mr. Dey and Aéropostale. In its response to Mr. Dey's sentencing memorandum, the government agreed that he was entitled to a set-off for the amount he paid Aéropostale and that the amount paid by Mr. Finazzo would also be counted after the government was able to confirm it. Gov't Response to Dey Mem. at 21.

Accordingly, Aéropostale has received a total of $13 million from Mr. Finazzo and Mr. Dey which must be credited against any amount ordered in restitution.

## CONCLUSION

For all the foregoing reasons, the government has failed to prove that Aéropostale suffered any actual financial loss as a result of Mr. Finazzo's actions. Accordingly, an order of restitution is not permitted or required in this case.

Dated: New York, New York
November 7, 2013

Respectfully submitted,

CARTER LEDYARD & MILBURN, LLP

By: /s/ Alan S. Lewis
Alan S. Lewis
Robert J.A. Zito
Two Wall Street
New York, NY 10005
(212) 732-3200

*Attorneys for Christopher Finazzo*

9